## STATE v. MORGAN.

1. SCHOOL LANDS: *Statute regulating sale of.*

Section 52, chapter 154, Gould's Digest, required that the school lands should be sold upon a credit, the purchasers to give bonds and pay interest semi-annually, but provided that "any person might pay the amount in cash for which said land was sold." HELD: That the provision as to cash payments applied only to purchasers and that it was not the purpose of the statute to permit one thus to acquire land which had been sold to another.

2. SAME: *Same: Authority to sell.*

Sections 5564, 5565, Gantt's Digest, only enlarged the authority elsewhere conferred by statute on County Collectors to sell the school lands; and section 5578, id., merely provided a method by which persons who had purchased lands according to law and complied with the terms of purchase, might acquire patents. Neither of these statutes nor any other authorized the sale of such lands by the Board of Commissioners of the common school fund.

3. PATENTS: *Collateral attack upon.*

A patent of the State absolutely void on its face, as for instance where it is for land reserved by statute from sale, or is executed by officers not charged with that duty, may be assailed in any controversy. But where a patent for lands of the State subject to sale is executed by officers empowered by law to issue it, their decision that the facts necessary to its issuance existed, is conclusive against collateral attack.

4. SAME: *Same.*

Gantt's Digest, section 5571, having made it the duty of the Governor and Secretary of State to execute patents for the school lands to purchasers thereof on payment of the purchase money, a patent executed by those officers in the manner provided by the statute, although issued pursuant to a sale made without any warrant of law, cannot be assailed in an action of ejectment, and can be avoided only by a direct proceeding in chancery for that purpose.

5. SAME: *Proceeding to annul: Complaint.*

A complaint in equity by which the State seeks to cancel its patent and recover the possession of lands held thereunder, is insufficient unless it offers to restore to the defendant the purchase money and taxes received from him and to pay the value of his improvements, less the rents and profits with which he ought to be charged.

APPEAL from *Independence* Circuit Court.

R. H. POWELL, Judge.

*Coleman & Yancey,* for appellant.

State v. Morgan.

There is no allegation in the answer that a sale of the land was ever made to Morgan, by any person, or in any manner known to the law, or that he ever did, in fact, *purchase* the land. The answer was not responsive to the complaint, and did not show a *prima facie* title. *Mansf. Dig.*, *sec. 2632.* There never was a *sale* of the land to Morgan. The whole proceedings were wholly without authority of law. *Gantt's Digest, secs.* *5560, 5561, 5568,* etc. The Collector is the only person authorized to sell school lands, and he only on the *terms*, at the *place* and in the *manner* prescribed. A sale made otherwise is a nullity, and a patent based upon such a sale is *void*. *Blackw. Tax Tit., 46; 27 Ark., 226; ib., 414.*

The Secretary of State issues patents "from returns made by the Collector," and *not* from any "consideration" or "order" of the Board of Commissioners. *Gantt's Digest, sec. 5571.*

The State is not bound by the unauthorized acts of its officers, and third parties deal with them at their peril. *Story on Ag., sec. 307a; 39 Ark., 580.*

A naked patent will not divest the State of her title, unless a lawful sale has first been made. *27 Ark., 414; 42 id., 77; 46 id., 333.*

Statutes of limitation do not run against the *State. Wood on Lim., 88,* and as Morgan was in possession under a void patent, ejectment was the proper remedy; a void deed not being a "cloud upon title," chancery will not take jurisdiction. *27 Ark., 233, 414.* But if there was error in the method of procedure, the error was waived. *Mansf. Dig., sec. 4927.*

The proviso in section 52, chapter 154, Gould's Digest, and section 14, act of April 12, 1869, simply authorized a *purchaser in accordance with law*, to pay his bid *in cash*. And this proviso was repealed by section 6, act of April 12, 1869, page 190. *Gantt's Digest, sec. 5562.*

Gantt's Digest, section 5578, has reference exclusively to the issuance of patents to *purchasers* under the old school law, who had complied therewith.

*Robert Neill,* for appellee.

Reviews the antecedent laws on the subject, and contends that where school lands *have once been offered for sale* as prescribed by law, and by reason of non-payment, the land reverts to the State, the Board of Commissioners were authorized to sell to any one for cash at a price not less than $1.25 per acre. *Gantt's Digest, secs. 5564, 5565; Gould's Digest, sec. 52, ch. 154, and proviso; sec. 5563 Gantt's Dig.; ib., 5665, 5549 to 5565; Acts of 1859, p. 148.*

Section 52, *sup.*, was not repealed by section 6, acts April 12, 1869, as to lands which had already been offered and sold, and reverted to the State, but if it was, *section 5565* was not.

But if the board did err in their construction of the law, the patent is not void. The Governor and Secretary of State, then Superintendent of Public Instruction, composed the Land Department of the State, charged with the duty of passing on the facts necessary to entitle a party to a patent (*secs. 5570-1-2-3, Gantt's Dig.*), and its judgment is unassailable, except by direct proceedings to annul the patent. The patent passes the title. *16 Otto, 447; Gantt's Dig., sec. 5571; id., 857; 10 Johnson, 22; 4 Bibb (Ky.) 329; id., 330;* and cannot be attacked collaterally. *4 Munroe, 51; 4 Dana, 50; 2 B. Mon., 57; 13 Pet., 436;* the patent is conclusive. *14 Otto, 636; 31 Ark., 609; ib., 425;* thereby divesting the State of her title. *Supra.*

The patent must prevail in a suit at law until canceled in equity by bill praying such relief. Even courts of equity do not grant relief unasked. *45 Ark., 270; 43 id., 317.*

Even if his patent were worthless, the State must do equity (*17 Fed. Rep., p. 39; 21 How., 450; 7 Wall., 675; 12 Wheat., 559; 94 U. S., 217; 7 Wall., 159*) by complying with the betterment act, restoring the consideration, paying for improvements, etc.

That the patent is conclusive at law, see *27 Ark., 200; 39 id., 121.* The State is estopped by her deed. *Bigelow Est.,*

*2d ed., 247; 4 Pet., 87; 17 Wall., 32; 49 Mo., 224; 38 Ark., 81; 7 Cal., 527.*

HEMINGWAY, J. The State of Arkansas brought suit in the Independence Circuit Court to recover of Thomas J. Morgan a section of common school land.

The defendant filed his answer to the complaint, to which a demurrer was interposed. The demurrer was overruled, and the cause tried upon the pleadings and exhibits; there was verdict and judgment for defendant, from which the State prosecutes this appeal.

The court treated the answer as a complete bar to plaintiff's right to recovery, and we are now called to decide whether this was error.

The complaint alleges that the plaintiff is the owner of the land, and that the defendant is in the unlawful possession thereof. That the State acquired title by an act of Congress and an ordinance of the General Assembly, each approved in 1836. That the defendant claims title under patent from the State, signed by the Governor and countersigned by the Secretary of State, bearing date the 27th day of February, 1875. That the patent was procured by the false and fraudulent representations of the defendant in this: That the defendant presented an application to the Board of Common School Commissioners for the purchase of the land, and also an unsigned paper, addressed to the Secretary of State, who was a member of the board, purporting to come from the office of said board, stating that the defendant had paid in full the purchase money for the tract of land, and recommending that a patent be issued to him. It is further alleged that the defendant had not acquired a right to a patent, either by original purchase, or by assignment from the original purchaser; and that the action of the Governor and Secretary of State in issuing the patent was in excess of their authority and without warrant of law There is prayer for the possession of the land, with damages.

The answer of the defendant alleges that in 1854 the land was sold by the county commissioners to one John W. Bright, upon a credit. That Bright failed to pay either the principal or interest, and by the provisions of the law regulating the sale, the land reverted to the State. That on the 18th day of February, 1875 the land was subject to sale by the Board of Commissioners of the common school fund, and he made application to said board to purchase it. Denies that he made any false or fraudulent representations to the board to procure a patent, but alleges that his application disclosed the sale to Bright, and its terms. Alleges that the application was duly considered at a meeting of the board, and that the board, being satisfied that the land had been sold to Bright at public auction, that he had failed to pay for the same; that it had reverted to the State, and that $2 per acre was a fair price for it, ordered that it be sold to him at that price. That he paid into the treasury of the State the price fixed, and thereupon the patent issued to him, and he thereby acquired title to and became the owner of the land. That the board had adjudged that he had become and was the purchaser of the land, and that the finding was conclusive against the State. That the facts so found were true. It is further alleged that the defendant complied with all the conditions of purchase, entered immediately into possession of the land, paid all taxes assessed against it, and had made lasting and valuable improvements upon it. A copy of the patent is exhibited with the answer.

The complaint was entitled "at law," and the court so treated the case. With this view it overruled the demurrer to the answer. Was this error?

1. SCHOOL LANDS : Statute regulating sale of.    It is contended for the appellee that the State Board had ample authority to sell the land, and that he acquired a perfect title to it. To support this contention we are referred to *sec. 52, chap. 154, Gould's Digest; sec. 14, act of April 12, 1869, and sec. 5564 of Gantt's Digest.*

Section 52, of chapter 154 of Gould's Digest, prescribes the terms upon which school lands should be sold. It provides for sales upon a credit, purchasers to give bonds and pay interest semi-annually. It contains a provision "that any person may pay the amount in cash for which the said land was sold," and it is upon the terms of this provision that the appellee relies to sustain his right to purchase. We cannot give it the construction contended for, even if the act was in force when he purchased. Its manifest purpose was to permit purchasers to pay cash instead of giving the bonds provided for. It was not intended to allow other persons than the purchasers to acquire land sold, by paying in cash the amount for which some one else had purchased it.

The fourteenth section of the act approved April 12, 1869, provided a mode by which persons who had purchased lands according to law, and complied with the terms of purchase, but who had received no patent, might acquire patent and perfect their legal title. It conferred no anthority to sell.

Sections 5564 and 5565, of Gantt's Digest, conferred no new authority to sell, but only enlarges the authority elsewhere conferred on the Collector of the county. It is not alleged that the appellee purchased from the County Commissioner under the provisions of Gould's Digest, or from the County Collector, under the provisions of Gantt's Digest: as the Board of Commissioners never had authority to sell, it follows that his purchase was made without any warrant of law.

But it was provided by the law in force when the appellee received his patent, that every purchaser of common school lands should be entitled to receive a patent from the State, conveying and assuring title after the purchase money was paid. *Gantt's Dig., sec. 5570.*

And it is made the duty of the Secretary of State to make out patents, to be signed by the Governor, and countersigned by him, with the seal of the State affixed. *Gantt's Dig., sec. 5571.* The object of the patents so made is to invest the legal

2. SAME:
Same:
Authority to
sell.

title of the lands described in the patentee. Such a patent was executed and delivered to the appellee, and the purchase price of the land received and appropriated by the appellant. What then is the effect of the patent and the status of the parties with reference to the land? It was State land, subject to sale, and the patent was executed by the officers charged with that duty. Patents should issue only to persons who had purchased in the manner provided by law; but whether the particular facts existed or the antecedent acts had been done necessary to the issuance of a patent, was a question for the officers making it, and their determination is conclusive against collateral attack.

**3. PATENTS: Collateral attack upon.**

Their acts in the line of authority cannot be questioned because they took mistaken views of the law, or of their duty under it. If the patent was absolutely void on its face, that is, if it appeared on its face, to be invalid, "either when read in the light of existing law, or by reason of what the court must take judicial notice of; as, for instance, that the land is reserved by the statutes from sale, or otherwise appropriated, or that it was executed by officers not intrusted by law with the power to issue grants of portions of the public domain, it would be subject to assault in any controversy." But where such is not true, and it is attempted to annul it for some official error or misconception, resort must be had to a direct proceeding in a proper tribunal. *St. Louis Smelting and Refining Co. v. Kemp, 14 Otto, 636; Wilson v. State, 47 Ark., 198.*

**4. SAME: Same.**

It follows that the State could not assail its patent in an action of ejectment, and the complaint did not state a good cause of action at law. But upon the facts alleged, it had an undoubted right to ask that the patent be canceled, and although it may have brought its case on the law side of the docket, the court should have proceeded to try it and administer relief according to the case made.

The answer is not a complete bar to the case made by the complaint; if its allegations be confessed, the patent may be

avoided at the suit of the State, and the defendant shows only the right to have such terms imposed as are equitable and just.

It is a familiar principle of equity jurisprudence that, "When a complainant comes before a court of conscience invoking its aid, such aid will not be granted except upon equitable terms. *Whelan v. Reilly, 61 Mo., 565.*

In suits to set aside conveyances between private parties, this principle has been held to apply, and require that the plaintiff restore the consideration he has in hand. *Stull v. Harris, 51 Ark., 294; Boseman v. Browning, 31 Ark., 364; Ellis v. Ellis, 4 So. Rep., 868.*

It has been held that the sovereign is not bound by any statute of limitations, or barred by the laches of its officers, in suits to enforce a public right; yet it must receive its relief in accordance with the general principles of equity, and not in violation of their terms. *Brent v. Bank of Wash., 10 Pet., 615; U. S. v. Beebe, 17 Fed. Rep., 36.*

In this case the State cannot retain the purchase money and taxes received from the defendant, and ask to receive from a court of equity possession of the land improved by his betterments. It cannot escape a compliance with the terms that its laws impose upon others. The complaint contains no offer to comply with equitable terms. In that respect it is defective, and until it shall be so amended as to remedy this omission, the answer is sufficient. On account of this defect, the demurrer to the answer should have been sustained, and its effect extended back to reach the complaint. We might so treat it here, but as this would result in dismissing the cause without affording the plaintiff an opportunity to perfect his complaint, we will reverse the judgment and remand the cause. The court can render no judgment against the State, but it may impose equitable terms in administering relief and make a full compliance with them, a condition precedent to its enjoyment.

If the plaintiff shall amend its complaint and supply the omission we have indicated, the court will hear the cause, have

5. SAME: Proceeding to annul: Complaint.

an account stated of the amount which plaintiff should pay the defendant, crediting him as in other similar suits by the purchase money, amount paid for taxes, and the value of improvements on the land, and charging him with the rents and profits; and upon the payment of said sum, render a decree canceling the patent. If such amendment is not made the cause will be dismissed. As the plaintiff may not be able to comply with equitable terms until the Legislature meets, and provides, if it so desires, the fund necessary, it would perhaps be well for the court to continue the cause until that time.

HUGHES, J., did not sit in this case.