STATE *v.* CISSNA.

Opinion delivered April 13, 1925.

1.  COURTS—EFFECT OF DECISION OF FEDERAL COURT ON LAND TITLES.— A decision of the federal courts on a question involving the title to land claimed by the State, while not binding on this court in a similar case, is highly presuasive.

2.  EVIDENCE—JUDICIAL NOTICE.—It is a matter of common knowledge that islands in the Mississippi River are subject to overflow.

3.  LEVEES—TITLE TO LANDS OF STATE WITHIN LEVEE DISTRICT.— Acts 1893, pp. 24, 172, donating all lands of the State within the limits of the St. Francis Levee District to that district, *held* to extend to the middle of the Mississipi River, and to include all islands within such territory.

Appeal from Crittenden Chancery Court; *J. M. Futrell*, Chancellor; affirmed.

J. S. Utley, Attorney General; Coleman, Robinson & House and R. G. Brown, of counsel for appellant.

Ewing, King & King, and S. V. Neely, for appellee.

SMITH, J.   It was alleged in the complaint filed on behalf of the State of Arkansas that the State owned certain lands described  as fractional parts of sections 28, 32, 33, and 34, township 10 north, range 10 east, and of fractional sections 4 and 5, township 9 north, range 10 east, lying partly in Mississippi County and partly in Crittenden County. These lands collectively are referred to in the complaint as comprising Dean's Island, and, for convenience in referring to them, that description will be employed in this opinion.

It was alleged that defendant had, without right, entered upon these lands and cut a large quantity of valuable timber, and was about to cut more.   There was a prayer that defendant be enjoined from cutting timber and that he be required to account and.pay for the timber already cut.

A demurrer to this complaint was filed and sustained, it being adjudged by the court below that the State had previously granted the lands described to the St. Francis Levee District, and this appeal is from that decree.

There is quite an interesting discussion in the briefs of counsel as to the meaning and effect of the allegations of the complaint.   On behalf of the State the insistence is that the complaint alleges that the land described was an island in place in the Mississippi River at the time of the admission of the State into the Union and of the adoption of our present Constitution, and that the land continued to be and was in fact an island at the time of the formation of the St. Francis Levee District by the special act of the General Assembly of 1893.   On behalf of appellee it is insisted that the complaint alleges that the lands involved in this litigation were not an island, but were in fact lands forming the right bank of the Mississippi River at the time the St. Francis Levee District was created.   We pretermit a discussion of this question, and treat the complaint as alleging that the land in ques-

tion was an island in the Mississippi River, situated partly in Crittenden County and partly in Mississippi County, at the time of the creation of the St. Francis Levee District by the General Assembly of 1893.

Giving the complaint this construction, it becomes necessary to construe two special acts passed by the General Assembly of 1893. The first of these acts, which became a law February 15, 1893, created the levee district and defined its boundaries. Section 1 of this act, which defined the boundaries of the levee district, was amended by the act of the same session of the General Assembly, approved March 28, 1893, but the amendment is unimportant in the consideration of the question presented for decision. The second act became a law March 29, 1893 (Acts 1893, p. 172), and, by its provisions, certain lands were granted by the State to the levee district.

What were the boundaries of the district and what lands were granted to it? The answer to this question is decisive of the question presented on this appeal.

Section 1 of the act of February 15, 1893 (Acts 1893, p. 24), defines the boundaries of the levee district as follows: "That all that part of area of this State known as a part of the St. Francis basin, and more particularly described as follows, to-wit: Beginning on the left bank of the St. Francis River, at its confluence with the Mississippi River, thence in a northwesterly direction along said left bank of the St. Francis River to the southern boundary line of Lee County, thence west with said boundary line of Lee County to extreme high-water line on the base or slope of the highlands, thence in a northerly direction with the meanderings of the said highlands to the north boundary line of Craighead County, thence east along said north boundary line to the north line of Mississippi County, thence along said line to the Mississippi River, thence in a southerly direction along said right bank of the Mississippi River to the place of beginning, containing all that area which has heretofore at any time, either directly or indirectly, overflowed by water from the Mississippi River."

The second act was entitled "An act to donate to the St. Francis Levee District all the lands of this State within the limits of said levee district, and for other purposes." By this act it was provided that, for the purpose of assisting the citizens of the State to build and maintain a levee along the St. Francis front, and in consideration of the general good of the State, "that all the lands of this State lying within said levee district, except the 16th section school lands, and all the right or interest the State has or may have within the next five years, by reason of forfeiture for taxes or to any lands within said levee district, except said 16th section school lands, is hereby conveyed to said levee district," under certain restrictions and limitations, which related to the classification and disposition thereof.

It thus appears that, after creating the levee district, the State granted to it, in aid of the proposed improvement, all of the lands in the district belonging to the State except 16th section school lands.

The grant was in the broadest terms, and operated as a present grant by the State of all State lands lying in the levee district except only 16th section school lands. This grant would, of course, include islands in the Mississippi River belonging to the State, if such lands were within the boundaries of the levee district and were not school lands. It therefore remains only to determine whether Dean's Island lies within the St. Francis Levee District.

The question now under consideration was expressly decided by the District Court of the United States for the Eastern District of Arkansas, and by the Circuit Court of Appeals for the Eighth Circuit, upon an appeal from the decision of the district court, in the case of *Lightfoot* v. *Williamson*, 282 Fed. 592. The parties to that litigation claimed an island in the Mississippi River opposite Mississippi County. The plaintiff claimed under a deed from the State made pursuant to the act of March 21, 1917 (Acts 1917, p. 1468), which appears as §§ 6796 to 6802, both inclusive, C. & M. Digest. By these

sections it was declared that islands which had formed in the navigable rivers of the State subsequent to the admission of the State were the property of the State, and were subject to sale and disposition in the manner provided by the act. The plaintiff in that case had obtained a deed from the State Land Commissioner pursuant to this act. The defendant claimed under a quitclaim deed from the St. Francis Levee District, and it was alleged that the levee district had acquired the title under the acts of 1893, above referred to.

After finding that the boundaries of the levee district was the decisive question in the case, the court said: "The east meander line of the levee district is 'along said right bank of the Mississippi River.' With this as the meander line, how far did the grant extend? The act of March 21, 1893, said the grant should contain 'all that area which has heretofore at any time, either directly or indirectly, overflowed by water from the Mississippi River.' The grant from the State to the levee district, according to all the authorities, extended to the middle of the Mississippi River, the eastern boundary of Mississippi County, the levee district, and the State of Arkansas.''

Upon this construction the court held that the State had parted with its title by its grant to the levee district.

This adjudication is not, of course, binding on us, but it is highly persuasive, as the exact question presented here was decided there.

It is a matter of common knowledge that the islands in the Mississippi River are subject to overflow. The General Assembly defined the northern and southern boundaries of the levee district, and made the Mississippi River the eastern boundary of the levee district, and, by doing this, we think it was the purpose of the General Assembly to make the eastern boundary of the State coincident with that of the levee district between the southern point, where the boundary of the levee district begins, and the point where the northern boundary line ended, and, if this be true, the State's title to islands in

the Mississippi River which were not 16th section school lands lying between the southern and the northern boundaries of the levee district passed to the levee district by the donation act of 1893, *supra.*

The demurrer to the complaint was therefore properly sustained, and the decree of the chancery court is affirmed.