STATE *v*. GUTHRIE.

4-6477                                    156 S. W. 2d 210

Opinion delivered November 17, 1941.

*Jack Holt,* Attorney General, *David L. Ford* and *David S. Ford,* for appellant.

*Mark E. Woolsey,* for appellee.

HOLT, J. On April 7, 1941, appellant filed complaint in the Ozark district of the Franklin chancery court, alleging, among other things, that one of the appellees, M. H. Guthrie, purported to purchase from the state by deed, dated November 23, 1917, executed on behalf of the state by the then land commissioner, W. B. Owen, certain island land in the Arkansas River in Franklin county. The deed is made a part of the complaint and contains the following recitals:

"Whereas, under the provisions of an act of the General Assembly of the State of Arkansas, entitled 'An Act to Provide for the Sale and Disposition of Islands formed or which may form in navigable rivers or streams of the State which belong to the State of Arkansas, and for other purposes,' and—

"Whereas, H. M. Guthrie has heretofore filed a petition for the survey of certain lands belonging to the State of Arkansas and has made the necessary deposit for the purchase price and the expense of surveying the same as required by said act, and—

"Whereas, a survey has been executed and the plat and field notes thereof filed and approved as required by said act, and—

"Whereas, H. M. Guthrie has paid the full purchase price of $182.66/100 and the cost of survey of the following described lands: Fractional section seven (7) and (18) on Guthrie's Island in Arkansas River, in township nine (9) north, range twenty-six (26) west, containing one hundred and forty-six and 13/100 acres."

Then follows a clause selling and conveying the land to M. H. Guthrie, his heirs and assigns, including all "accretions and relictions."

It is further alleged that the above deed is void and without effect for the reason that the land described is an island in the Arkansas River, a navigable stream, and that appellee, M. H. Guthrie, failed to comply with act 282 of 1917 now appearing as §§ 8739-8745, inclusive, of Pope's Digest.

It is further alleged in the complaint that the description of the land set out in the deed, *supra*, is void and without effect and "that the deed claimed by the said defendants to have been made to the said M. H. Guthrie for said island as aforesaid is not accessible to. agriculture and that the same is not below the mesne high water mark of the Arkansas River in which the same is located and that under the law the plaintiff could not purchase and the said land commissioner could not sell or dispose of the lands which are not accessible to agriculture and which are not below the mesne high water mark of the stream or river in which they are located."

It is further alleged that the other appellees (defendants below) have no interest in the land; that large quantities of coal have been removed from the land by appellees without authority; that appellees abandoned the land and ceased to exercise any control over same from 1925 to 1938 and paid no taxes on the property during this period.

A supplement to the complaint was filed alleging, among other things, that appellees "are now holding and

claiming possession by reason of a deed from the state of Arkansas to T. M. Chastain of the date of December 20, 1933, . . . and that the said T. M. Chastain failed to comply with the law made and provided for the purchase of the island lands belong to the state of Arkansas located in a navigable stream (§§ 8740-8741, Pope's Digest)''; that the lands were forfeited and sold for taxes for the year 1927, and in 1933 the state issued its redemption deed to T. M. Chastain and that ''George W. Neal, Commissioner of State Lands, was without authority to make and deliver a redemption deed to T. M. Chastain for said lands.''

There were other allegations not necessary to set out here. The prayer of the complaint was that the deed from the State Land Commissioner, W. B. Owen, to M. H. Guthrie be canceled and declared void; that a certain mineral deed and mortgages executed by appellees, M. H. Guthrie and wife, be canceled; that title to the island land be vested in the state of Arkansas, free from all claims of appellees and that appellees account for all coal mined from said land and for other equitable relief.

Demurrer was interposed by appellees to the complaint setting up the following grounds: ''First, that said complaint shows upon its face that it does not state facts sufficient to constitute a cause of action. Second, that the court does not have jurisdiction of the persons or subject-matter of the action. Third, that the plaintiff has not legal capacity to sue.''

Upon a hearing, the court sustained the demurrer on the one ground that the complaint does not contain facts sufficient to constitute a cause of action. Appellant elected to stand on its complaint, refused to plead further, and from the decree of the court dismissing its complaint for want of equity, it has appealed.

Does the complaint state a cause of action? It is our view that it does.

The rule in testing a complaint on demurrer is stated by the late Judge HART in *Moore* v. *Exelby,* 170 Ark. 908, 281 S. W. 671, as follows:

"In determining the sufficiency of a complaint as against a demurrer on the ground that the facts are insufficient to constitute a cause of action, the allegations must be taken as true. *Moore* v. *North College Avenue Imp. Dist. No. 1,* 161 Ark. 323, 256 S. W. 70.

"Under the practice in equity, exhibits to the complaint will control its averments and the nature of the cause of action, and may be looked to for the purpose of testing the sufficiency of the allegations of the complaint."

And in *Brown* v. *Arkansas Central Power Co.,* 174 Ark. 177, 294 S. W. 709, it is said: "It has also been repeatedly held by this court that 'in determining whether or not a demurrer to a complaint should be sustained, every allegation made therein, together with every inference which is reasonably deducible therefrom, must be considered.' *Gus Blass Co.* v. *Reinman,* 102 Ark. 287, 143 S. W. 1087; *Cox* v. *Smith,* 93 Ark. 371, 125 S. W. 437, 137 Am. St. Rep. 89; *Moore* v. *Exelby,* 170 Ark. 908, 281 S. W. 671."

It will be noted from the recitals in the deed, *supra,* of the State Land Commissioner, W. B. Owen, acting for the state, to M. H. Guthrie, that there is no recital to the effect that the island land in question is accessible to agriculture or that it is above the mean high water mark of the Arkansas River.

We think, however, that the inhibition contained in § 8745, Pope's Digest, necessarily implies the exercise of discretion on the part of the State Land Commissioner in determining whether the island land is subject to sale and that the presumption must be indulged that the island land was suitable to agricultural purposes or above the mean high water mark of the river where the deed contained no recital to the contrary. *Reed* v. *Wilson,* 163 Ark. 520, 260 S. W. 438; *Lewis* v. *Owen,* 146 Ark. 469, 225 S. W. 648. However, this discretion may be abused, and while the presumption is that the land commissioner did not abuse his discretion, this presumption is not conclusive, but may be rebutted by competent proof. We are cited to no statute that would

make conclusive this presumption in favor of the validity of the land commissioner's act.

The land commissioner, who conveyed for the state, was acting as its agent. He was a creature of the law and bound to obey it. He was required to comply with every provision of act 282, now §§ 8739-8745, inclusive, Pope's Digest.

The complaint, as indicated, alleges that the land commissioner failed to comply with the provisions of § 8745 and was without authority to sell the land for the reason that the land in question was in fact not accessible to agriculture and was not above the mean high water mark of the river. By demurrer the truth of this allegation is admitted. This allegation, together with the other allegations in the complaint, we think, stated a cause of action.

If the evidence shows that the island land at the time the deed was executed on November 23, 1917, was not accessible to agriculture, or was below the mean high water mark of the river, then the state had no power to sell, and the deed would be void.

The powers of public officials, such as the land commissioner in the instant case, are set out in 22 R. C. L. 455, § 114, in this language: "The Supreme Court of the United States has repeatedly asserted that all the officers of the government from the highest to the lowest are creatures of the law and bound to obey it. The powers of each are limited and while some exercise powers which are defined in the fundamental law, the larger portion of them are of statutory creation with duties and powers prescribed and limited by law."

While appellees argue here that there is no allegation in appellant's complaint that the island land in question was not accessible to agriculture, or below the mean high water mark of the river, in 1917 when the deed was issued, we think that a fair inference to be drawn from the language used in the complaint supports appellant's contention that this was the effect of the language used. The complaint alleges failure on the part of State Commissioner, Owen, to comply with act 282 of 1917 and

§ 8745 of Pope's Digest, and we think in a direct attack, such as this, with the other allegations, stated a cause of action.

It is urged here by appellant that the deed in question is void because the description of the land therein was insufficient to identify it. We cannot agree with this contention. We insert in the opinion at this point

Fractional Township 9 north of the base line, Range 26 West of the 5th principal meridian, on Guthrie's Island.

Scale one inch equals 10 chains

Office of Commissioner State Lands
Little Rock, Ark.
Nov-22ᵈ 1917
The above plat of fractional Sections 7 and 18 on Guthrie's Island in Arkansas River is conformable to the field notes of the survey thereof returned to this office on the 29th day of October 1917 by C. S. Turner, Surveyor appointed by this office to execute said survey, under and by virtue of act No. 282 of Acts of 1917. Approved.

Wᵐ B. Owen, Commissioner State Land
By U. H. Glancurd, Deputy Comᵈ

a copy of the map or survey of the island land here in question filed in the office of the land commissioner October 29, 1917, which is a public record of which we take judicial notice.

The description used in the deed takes in all of fractional sections 7 and 18 on Guthrie Island in Arkansas River, township 9 north, range 26 west, containing 146.13 acres. The acreage stated in the deed embraces all the land that was then known as "Guthrie's Island" and as such was capable of identification. We have many times held that the use of the word "fractional" is not synonymous with the word "part" and that the use of "fractional" or "Frl." in land descriptions does not invalidate the description.

In the case of *Bartel* v. *Ingram,* 178 Ark. 699, 11 S. W. 2d 488, the following description was held good and sufficient to identify the land: "the 'fractional southwest quarter of the southwest quarter, section 19, township 17, range 15—26 acres,' and in the 138.94-acre tract as 'fractional northwest quarter, section 30, township 17, range 16, 138.94 acres'."

And in *Rucker* v. *Arkansas Land & Timber Co.,* 128 Ark. 180, 194 S. W. 21, this court said: "The description on the tax book is as follows: 'Frl. S ½ of NW ¼, 18-16-14, 53 acres.' The contention is that the abbreviation 'Frl.' for the word 'fractional' is synonymous with the word 'part' and merely indicates an unidentified portion of the subdivision mentioned, which renders the description void for uncertainty. This is an incorrect interpretation of the meaning of the abbreviation, for it has reference to a term commonly used indicating a section or part of a section according to the government surveys."

Appellees insist that their demurrer was properly sustained for the reason that appellant in its complaint does not allege any offer to restore to the purchaser the amount of the purchase price and the amount of the taxes paid on said island land, and relies upon the case of *State* v. *Morgan,* 52 Ark. 150, 12 S. W. 243. We agree with appellees that the principles of law announced in

that case apply here; however, we think that the principles announced call for a reversal of the instant case. The Morgan case, *supra,* was an action to cancel and set aside a patent from the state for certain school lands. There this court said: "It is a familiar principle of equity jurisprudence that, 'When a complainant comes before a court of conscience invoking its aid, such aid will not be granted except upon equitable terms.' *Whelan* v. *Reilly,* 61 Mo. 565.

"In suits to set aside conveyances between private persons, this principle has been held to apply, and require that the plaintiff restore the consideration he has in hand. *Stull* v. *Harris,* 51 Ark. 294, 11 S. W. 104, 2 L. R. A. 741; *Bozeman* v. *Browning,* 31 Ark. 364; *Ellis* v. *Ellis,* 84 Ala. 348, 4 So. Rep. 868.

"It has been held that the sovereign is not bound by any statute of limitation, or barred by the laches of its officers, in suits to enforce a public right; yet it must receive its relief in accordance with the general principles of equity, and not in violation of their terms. *Brent* v. *Bank of Wash.,* 10 Pet. 596, 9 L. Ed. 547; *U. S.* v. *Beebe,* 17 Fed. 36.

"In this case the state cannot retain the purchase money and taxes received from the defendant, and ask to receive from a court of equity possession of the land improved by his betterments. It cannot escape a compliance with the terms that its laws impose upon others. The complaint contains no offer to comply with equitable terms. In that respect it is defective, and until it shall be so amended as to remedy this omission, the answer is sufficient. On account of this defect, the demurrer to the answer should have been sustained, and its effect extended back to reach the complaint. We might so treat it here, but as this would result in dismissing the cause without affording the plaintiff an opportunity to perfect his complaint, we will reverse the judgment and remand the cause. The court can render no judgment against the state, but it may impose equitable terms in administering relief and make a full compliance with them, a condition precedent to its enjoyment.

"If the plaintiff shall amend its complaint, and supply the omission we have indicated, the court will hear the cause, have an account stated of the amount which plaintiff should pay the defendant, crediting him as in other similar suits by the purchase money, amount paid for taxes, and the value of improvements on the land, and charging him with the rents and profits; and upon payment of said sum, render a decree cancelling the patent. If such amendment is not made, the cause will be dismissed."

Since appellant's complaint contains no allegation of the necessary tender, the cause will be reversed to afford appellant an opportunity to amend its complaint to supply this omission. Should appellant fail to make this amendment, the cause will be dismissed.

The decree is reversed, and the cause remanded with directions to proceed in conformity with this opinion.