TOM WILLIAMS ET AL, TRUSTEES OF MT. MORIAH
BAPTIST CHURCH AND BURYING GROUND v. ARTHUR
CAMPBELL

73-10                                              495 S.W. 2d 512

Opinion delivered May 28, 1973
[Rehearing denied July 2, 1973.]

*James L. Sloan,* for appellants.

*Charles A. Walls Jr.,* for appellee.

FRANK HOLT, Justice. Appellants, Trustees of Mt. Moriah Baptist Church and Burying Ground, initiated this action in 1959 by a complaint to quiet title and to enjoin appellee from using any portion of a 20 acre tract of land which the appellants claim their predecessors acquired by deed from the state land commissioner in 1950. The appellee answered and denied the validity of appellants' title and affirmatively asserted fraud by the

appellants' predecessors in procuring the deed. Specifically, the appellee alleged that "said land was not set aside as a church or burying ground but was used by the school district for school purposes and all affidavits filed with the Land Commissioner are false." A few months later the Pulaski County Special School District filed an intervention alleging ownership of the 20 acres; that it had always been used for school purposes and exempt from taxation; that it had conveyed the land by quitclaim deed to appellee in 1957, reserving the right to use the land for school purposes and that the intervenor now has need of the lands for school purposes. The school district asked that title be quieted in it. A copy of the quitclaim deed to appellee was made an exhibit to the intervention. The Trustees responded and in substance denied the allegations. The case was dormant until 1971 when appellee secured a temporary order restraining appellants from using certain portions of the improved land for burial purposes. Thereafter, the appellants secured an injunction against appellee. Shortly before the trial, the school district, the intervenor, asked that it be dismissed as a party to the suit stating that it had only used a small portion of the land; that the balance was used by the church and cemetery and it had no further interest in the property.

A decree was rendered by the chancellor invalidating appellants' 1950 land commissioner's deed and awarding divided possession of the 20 acres to both the appellants and the appellee. For reversal the appellants first contend that the chancellor misapplied the controlling law. We cannot agree.

As appellants assert they acquired their 1950 deed pursuant to the provisions of Ark. Stat. Ann. § 10-208 (1956 Repl.), which was then in effect with respect to this type of a conveyance. It is appellants' interpretation that the act requires only (1) a claim based upon a regular unbroken chain of title to 1889, (2) no adverse claim for 20 years subsequent to 1889, and (3) actual possession at the end of the 20 year period which is, at the most, the end of the year 1909. It is appellants' position that they met these requirements and the 1950 land commissioner's deed vested title in the appellants as of 1909 or at the end of the 20 year period following 1889.

In their 1950 petition to the land commissioner for a deed, appellants' predecessors asserted that "[W]e, the undersigned, state that we are the owners and in possession of [the 20-acre tract]. Claim to title is based on 'continuous ownership since prior to 1891 and used as a church and burying ground continuously since that date to the present time.' " Affidavits supported the petition's assertion of ownership, claim of continuous possession and use of the land, for the required period, for a church and burying ground and the absence of any adverse claimants. Accompanying the petition and affidavits was a certificate from the county clerk that the 20 acres was not assessed between 1889 and 1948 because it was noted on the tax books as church and cemetery property. The deed, duly issued by the commissioner to the appellants, acknowledges "proof of its actual possession, together with its abstract and muniments of title, showing further that there are no adverse claimants."

The chancellor, as indicated, invalidated the deed finding that the preponderance of the evidence did not indicate that the requirements of § 10-208 were met by appellants. Quoting the chancellor, "[I]t appears from the evidence that the affidavits upon which the deed was obtained were obviously in error as there were adverse claimants and that the applicants [appellants] were not in actual possession of the twenty acres." The chancellor's finding was properly based upon a factual issue. It is, of course, well settled that this court will reverse a chancellor's finding of fact only when the finding is against the preponderance of the evidence. *Marine Mart* v. *Pearce*, 252 Ark. 601, 480 S.W. 2d 133 (1972), *Home Insurance Co.* v. *Moyer*, 252 Ark. 51, 477 S.W. 2d 193 (1972).

The appellants, of course, had the burden of proof in their quiet title action to establish their allegations as to ownership and the right to an injunction against the appellee. Appellants introduced into evidence their 1950 land commissioner's deed together with the supporting affidavits and the county clerk's certificate reciting that the property had not been assessed or taxes collected on it since 1889 or succeeding years inasmuch as it was not assessed because it was "church and cemetery property."

It appears that the affiants who secured the 1950 deed are deceased. However, the appellants adduced evidence from some of the present Trustees and other witnesses that they were long time members of the church; that school was held in the church building until about 1919 when a small one room school building was placed on the land and operated as a public school. One of these witnesses stated he assisted in securing the state deed. According to appellants' witnesses there was a church cornerstone indicating that the church existed in 1891 and inscriptions on tombstones reflect that there were burials there as early as 1895. The cemetery was not used exclusively for the church membership and was available for public use. The burial area, approximately three acres and rather recently fenced, is located on the southeast corner of the 20 acre tract. This tract is bisected by a bayou. Appellee has about 100 to 150 acres of pastureland adjoining the area south of the bayou. Appellants' witnesses acknowledged that appellee had pastured his cattle for many years in the area outside the cemetery. In fact one stated that this had occurred as long as he could remember. It appears that none of the witnesses testified to their personal knowledge there was no adverse use of the 20 acre tract preceding 1909, which appellants say is the critical year.

The appellee, who is 89 years of age, testified that he had lived in the vicinity and was acquainted with the area since 1910. He, also, stated that when he first became acquainted with the property there was an old school house on it which was later removed in the 1950's. It was his understanding that the 20 acre tract was "a sixteenth section land" or school land and he had used part of it as pastureland by permission of the local school director. Another witness corroborated appellee's testimony as to the existence of a school house on the tract. The appellee, also, adduced as an exhibit to his testimony his 1957 quitclaim deed from the Pulaski County Special School District. Also, a 1953 certificate of the county clerk was introduced as evidence, reciting there had been no tax assessments against the 20 acre tract since it had always been carried on the tax books as school lands. Of course, this conflicted with the clerk's 1950 certificate. Appellee produced another certificate of the county clerk dated in

1971 again certifying there had been no tax assessment on the 20 acre tract through 1889-1957 because it was on the county records as school lands. Since 1958 the tract has been carried on the books in appellee's name and taxes paid by him.

We cannot say the chancellor's findings that appellants' affidavits were obviously in error, there were adverse claimants, and appellants were not in actual possession of the 20 acre tract are against the preponderance of the evidence. In doing so we disregard the quitclaim deed, which appellants say is a nullity, of the school district to the appellee and any acts of adverse possession by appellee. Let it be remembered that the burden of proof was upon the appellants in their quiet title action to establish their ownership of the *entire* 20 acres and their right to an injunction. Appellants' deed, presumptively valid, is only evidence of title.

This tract was "school land," as appellants acknowledge, because it was and is a sixteenth section. There was evidence that a school building was on this tract of land before 1909, which appellants say is the critical year, and the tract was used thereafter for school purposes until after 1950. This is the date of appellants' deed based upon their petition which stated continuous ownership and possession from before 1891 to 1950. The area is unfenced and largely unimproved land. The topography is such that it is bisected by a bayou and the burial area, which occupies only approximately three acres, is on the south side where the ground is higher.

Although in 1950 the county official certified the lands were tax exempt since 1889 because they were carried on the books as church and cemetery property, a 1953 and 1971 certificate by this official corrects this certification to the effect that the lands were school lands which is understandable since it is a sixteenth section. Even if the 1950 certificate was not an essential part in securing the 1950 state deed, we think the chancellor properly gave the contradictory certificates some significance as to whether there was any adverse use of the 20 acre tract between the years 1889 and 1909 which appellants assert are the critical years.

We have considered and find no merit in other points asserted by appellants.

Affirmed.

FOGLEMAN AND JONES, JJ., dissent.

JOHN A. FOGLEMAN, Justice. I think that appellants have asserted three points that require reversal of the chancellor's decree. They are:

Mr. Campbell had no standing to attack the trustees' deed.

The trustees' deed has presumptive validity.

The Chancery Court did not find fraud, but invalidated the trustees' deed for "obvious error"; but the only error was that of the Chancery Court.

In order that these points be more clearly understood, attention should be directed to the pertinent statute, as it existed at the time the deed to appellants was issued by the Commissioner of State Lands. It was Act 183 of 1905, as amended by Act 661 of the Acts of 1921, and read:

That any person claiming to own land in this State known as sixteenth section or school land or any land sold under mortgage given to secure the school funds of any sixteenth section lands and purchased of said sale by the State of Arkansas, and whose claims are based on regular unbroken chain or [of] title dating back to 1889 and to whose claim there was not an adverse claimant for a period of twenty [20] years subsequent to 1889 and who was in the actual possession of said lands at the expiration of twenty [20] years, and on which lands and taxes had been regularly paid during said period of twenty [20] years, all title, legal and equitable that the State of Arkansas may have or appear to have in any such lands is hereby vested in such owners or parties and their grantees. And the State Land Commissioner upon such proof being made to him is hereby directed to execute a

deed conveying to said parties all the right [and] title the State may have in such lands.

In my opinion, appellants correctly argue that title was vested by the Act itself in one who (1) based his claim upon a regular unbroken chain of title dating back to 1889, (2) to which there was not an adverse claimant between 1889 and 1909, and who (3) was in actual possession of the land in 1909 and that the State Land Commissioner was directed to issue a deed to such a claimant upon proof of these facts being made to him. The deed was merely evidence of the title and it related back to the vesting of title in appellants under the terms of the act. See *Missouri Pac. R. Co.* v. *Sale,* 197 Ark. 1111, 127 S.W. 2d 133; *Jimmerson* v. *Fordyce Lumber Co.,* 119 Ark. 413, 178 S.W. 381; *Little* v. *Williams,* 88 Ark. 37, 113 S.W. 340, aff'd 231 U.S. 335, 34 S. Ct. 68, 58 L. Ed. 256 (1928); *Hibben* v. *Malone,* 85 Ark. 584, 109. S.W. 1008; *Branch* v. *Mitchell,* 24 Ark. 431; 73 C.J.S. 855, Public Lands § 198. A legislative act granting lands in broad terms has been held to operate as a present grant. *State* v. *Cissna,* 168 Ark. 565, 270 S.W. 963.

The deed itself was not based upon the claimants' possession at the time of appellants' application, but vested constructive possession, which was not ousted by anything short of actual adverse possession more comprehensive than the performance of temporary acts on the land without any intention to hold or occupy it for residence or cultivation or some other permanent use consistent with the nature of the property. *Thornton* v. *St. Louis Refrigerator and Wooden Gutter Co.,* 69 Ark. 424, 65 S.W. 113. The adverse occupant's possession, we said, must be as his own property with a view to permanent use of it for his own benefit. Furthermore, one who makes no claim to the land is a mere intruder. *Conway* v. *Shuck,* 203 Ark. 559, 157 S.W. 2d 777. Mr. Campbell testified, "I never claimed to own it at all."

I do not think that Campbell had any standing to attack appellants' title. The act under which the deed to appellants was issued charged the Commissioner of State Lands with the duty of determining the existence of the pertinent facts necessary to the issuance of a deed.

Whenever a deed is issued by an officer charged with that duty, his determination whether the requisite facts existed or antecedent acts had been done which were necessary to the issuance of the deed is conclusive against collateral attack. *State* v. *Morgan,* 52 Ark. 150, 12 S.W. 243. The findings of the Commissioner of State Lands are final and binding on everyone except someone holding a claim of title from the State of Arkansas or through mesne conveyances from the state or having an interest that vested prior to the issuance of the deed. *Conway* v. *Shuck,* supra; 63 Am. Jur. 2d 583, Public Lands § 114. The deed under which appellants claim recites that appellants have filed proof of their actual possession, together with their abstract and muniments of title, showing that there are no adverse claimants and that the deed was issued in conformity with Act 661 of 1921 (an amendment of the Act of 1905). While the state has a right to have the deed canceled if it was issued upon the basis of false representations, any attempt to annul the deed for official error or misconduct must be had in a direct proceeding in a proper tribunal. *State* v. *Morgan,* supra. There is no question about the state's right to attack the conveyance for fraud in obtaining it or on direct attack by proof that its Land Commissioner failed to comply with the statutory requirements. *State* v. *Guthrie,* 203 Ark. 60, 156 S.W. 2d 210. Until it elects to do so, Campbell cannot. *Little* v. *Williams,* 88 Ark. 37, 113 S.W. 340, aff'd 231 U.S. 335, 34 S. Ct. 68, 58 L. Ed. 256 (1928). Campbell was not the holder of a claim of title from the State of Arkansas, and he did not deraign title through mesne conveyances from the state. He did not claim a prior vested right. He had standing only to question the authority of the Commissioner of State Lands to issue the deed. That authority clearly existed.

That appellants' deed from the Commissioner of State Lands is presumed to be valid is beyond question. See *Wunderlich* v. *Cates,* 213 Ark. 695, 212 S.W. 2d 556. See Ark. Stat. Ann. §§ 34-1922 (Repl. 1962), 50-421 (Repl. 1971), 10-527 (Repl. 1956). A state official authorized to issue a deed is presumed to have acted in conformity with law in issuing it. *Boynton* v. *Ashabranner,* 75 Ark. 415, 88 S.W. 566, 88 S.W. 1011, 91 S.W. 20. The presumption of validity does not depend upon the recitals of the deed.

*State* v. *Guthrie,* supra. The deed is prima facie evidence of the truth of all facts recited which were necessary to confer power to issue it. *Hendry* v. *Willis,* 33 Ark. 833; *Dawson* v. *Parham,* 55 Ark. 286, 18 S.W. 48. The deed itself is prima facie evidence of a valid title. *Thornton* v. *St. Louis Refrigerator and Wooden Gutter Co.,* 69 Ark. 424, 65 S.W. 113. The determinations made by the State Land Commissioner cannot be collaterally attacked, and are conclusive, at least, in the absence of fraud. *Little* v. *Williams,* 88 Ark. 37, 113 S.W. 340, aff'd 231 U.S. 335, 34 S. Ct. 68, 58 L. Ed. 256 (1928); *Williamson* v. *Baugh,* 71 Ark. 491, 76 S.W. 423; see also, 73 C.J.S. 855, Public Lands § 199.

Assuming, but not conceding, that Campbell had standing to attack appellants' deed and that his attack is not collateral, he bore the burden of proving fraud by clear and convincing evidence, since he would contradict the clear terms of the written deed. *Belew* v. *Griffis,* 249 Ark. 589, 460 S.W. 2d 80; *Clay* v. *Brand,* 236 Ark. 236, 365 S.W. 2d 256. This he did not do and the chancellor evaluated the evidence on this subject as showing that the affidavits upon which the deed was obtained were obviously in error. He held the deed invalid solely on the basis that the preponderance of the evidence indicated that none of the three requirements of the statute was met by plaintiffs. But appellee was concluded by the deed and its recitals insofar as the meeting of the statutory requirements was concerned. Even if not, the mere fact that the requirements were not met does not constitute a showing of fraud. And I submit that the chancellor erred in holding that the pertinent statute required that appellants' unbroken chain of title and possession must have been for a 20-year period immediately preceding their application for the deed. It was only through an amendment to the act in 1971 that possession at the time of application for a deed was required.

For any or all of the reasons hereinabove set out, I would reverse the decree.

I am authorized to state that Mr. Justice Jones joins in this dissent.