THOMASON *v.* ABBOTT.

4-9176 229 S. W. 2d 660

Opinion delivered May 8, 1950.

*Wilson, Kimpel & Nobles,* for appellant.

*R. H. Peace,* for appellee.

ED. F. McFADDIN, Justice. A parcel of ground, which the attorneys stated to be worth fifty dollars, is the subject of this litigation, resulting in a transcript of 285 pages and printed briefs of 217 pages. The learned Chancellor, after due consideration, prefaced his opinion with this observation:

"This case has developed into a big lawsuit over a small unimproved plot of ground in the Town of Hamp-

ton, Calhoun County, Arkansas. It is unfortunate that matters of this character cannot be adjusted between the parties without going into courts for settlement. No doubt the expenses of this litigation will far exceed the value of the property involved."

Since the right to a decision of this Court in a case like this one does not depend upon the value of the property in litigation, and since the opinion in this case, though it involves a small parcel, may be a guide in some subsequent case involving extensive holdings, we give in detail the factual situation and legal principles necessary to a decision.

Appellees, as plaintiffs, filed suit in the Chancery Court to recover possession of a strip of land measuring 52 feet east and west and 175 feet north and south, and definitely described as ". . . commencing at the southeast corner of section 31[1] . . . on the township line, and running north along the section line between sections 31 and 32 a distance of 250 feet for the point of beginning; running thence north 175 feet, thence west 52 feet, thence south 175 feet, thence east 52 feet to the point of beginning. . . ." After an extensive hearing the Chancery Court entered a decree for the appellees, and this appeal ensued.

I. *Chancery Jurisdiction.* Plaintiffs (appellees) deraigned title, and claimed to be the owners "and entitled to the full possession" of the parcel of land. The prayer of the complaint was "for possession of the above mentioned land," damages and quieting the plaintiffs' title. The answer of the defendants was not only a denial of the complaint but also prayed, *inter alia,* "that the title of the defendants be quieted and confirmed." Appellants (defendants) now claim that the complaint was an action in ejectment and should not have been tried in the equity court. In *Goodrum* v. *Ayers,* 56 Ark. 93, 19 S. W. 97, we said:

"Conceding that the plaintiff was not in possession of the land, and for that reason could not maintain a

---

[1] For brevity, we entirely omit the township, range and county, since no question is presented as to these.

suit to quiet title, it cannot avail the appellant; for he filed a cross-bill seeking to quiet his own title, and it gave the court jurisdiction of the entire controversy.'' To the same effect, see *Weaver* v. *Gilbert,* 214 Ark. 800, 218 S. W. 2d 353. So, whatever of equity jurisdiction might have been lacking in the plaintiffs' complaint was fully supplied by defendants' prayer for relief.

II. *Sufficiency of Plaintiffs' Record Title.* It has long been recognized, in cases like this, that the plaintiff must recover on the strength of his own title, whether the case be in ejectment or one to quiet title. In *Chavis* v. *Henry,* 205 Ark. 163, 168 S. W. 2d 610, we said:

''The plaintiffs (appellees) must recover on the strength of their own title, whether this case be considered as one in ejectment, or one to quiet title. For ejectment cases, see: *Carpenter* v. *Jones,* 76 Ark. 163, 88 S. W. 871; *Wallace* v. *Hill,* 135 Ark. 353, 205 S. W. 699, and cases collected in West's Arkansas Digest, 'Ejectment,' § 9. For quieting title cases, see: *Nix* v. *Pfeifer,* 73 Ark. 199, 83 S. W. 951; *Little* v. *Williams,* 88 Ark. 37, 113 S. W. 340; *Sanders* v. *Boone,* 154 Ark. 237, 242 S. W. 66, 32 A. L. R. 461, and cases collected in West's Arkansas Digest, 'Quieting Title,' § 10.''

Each side in this litigation claimed by *mesne* conveyances from Eli Cornish, as the common source of title. The plaintiffs claim both a record title and a title by adverse possession. We proceed, first, to examine plaintiffs' (appellees') record title—*i. e.,* the title reflected by deeds duly recorded and definitely describing or including the parcel of land in question:

(a) In 1906 Eli Cornish conveyed to H. B. Dunn ''. . . a part of the east half of the southeast quarter of section 31 . . . 52.50 acres'';

(b) In 1906 H. B. Dunn conveyed to C. L. Poole ''. . . a part of the east half of the southeast quarter of section 31 . . . 52.50 acres . . .'';

(c) In 1906 C. L. Poole conveyed to Hampton Realty Company ''. . . a part of the east half of the

southeast quarter . . . section 31 . . ." 49.50
acres;

(d) In 1913 the Hampton Realty Company (an Arkansas corporation) conveyed to C. L. Poole (ancestor of plaintiffs) ". . . the remaining part of the said southeast quarter of the southeast quarter of said section 31, . . . not formerly sold and owned by C. C. Blackstock, T. N. Means, J. B. Tomlinson, D. F. Wilson and the L. B. Pickle Estate and J. L. Hollingsworth, containing 12 acres, more or less . . .";

(e) In December, 1946, the county clerk executed a tax deed to C. I. Abbott on land described as ". . . Part E½ SE¼ section 31 . . . 6 acres" and ". . . part SE¼ SE¼ section 31 . . . 7.50 acres . . ."; and C. I. Abbott conveyed to appellees under this same description;

(f) Appellees have for many years paid taxes on ". . . Part SE¼ SE¼ section 31, 20.13 acres. . . ."

The foregoing is the record title of the appellees from Eli Cornish, the common source of title, it being remembered that the appellees are the heirs of C. L. Poole. As to each of the conveyances (a), (b), and (c), it will be observed that there was no *definite description* of any land. Each of these deeds was void for indefiniteness[2] insofar as a record title is concerned.[3] As to conveyance (d), the same rule—as to indefiniteness—applies, because there is nothing in the record before us to show what land if any was ever sold to or owned by some of the parties named as excluded— *e. g.* C. C. Blackstock and T. N. Means.[4] As to conveyances in (e) and the tax receipts in (f) above, these are also void for in-

[2] As between the grantor and grantee in each such conveyance, evidence *aliunde* the instrument might be introduced in a proper suit to establish what lands were intended to be conveyed; but the case at bar is not such a suit for reformation.

[3] See *Moore* v. *Jackson*, 164 Ark. 602, 262 S. W. 653, and cases there cited; *Adams* v. *Edgerton*, 48 Ark. 419, 3 S. W. 628; *Smith* v. *Smith*, 80 Ark. 458, 97 S. W. 439, 10 Ann. Cas. 522. See, also, Jones' "Arkansas Titles," § 248, *et seq.*, and § 309.

[4] In addition to cases previously cited, see *Cooper* v. *Newton*, 68 Ark. 150, 56 S. W. 867.

definiteness.[5] Therefore, the plaintiffs (appellees) have no record title to the parcel of land in litigation, and cannot prevail on record title, either in an ejectment action or a suit to quiet title.

III. *Sufficiency of Plaintiffs' Claim of Adverse Possession.* Even though the plaintiffs have no record title to the land, and even though their deeds do not constitute color of title, nevertheless if the plaintiffs had actual adverse possession[6] of the premises—that is, actual, adverse, continuous, hostile, notorious, peaceable and exclusive possession of the land—for the statutory period, then they might prevail in the absence of record title; but, as stated in Topic II, *supra,* the burden is on the plaintiffs to show such possession. We therefore examine the evidence to see if they ever had such possession as is required to justify a decree in their favor.

The evidence discloses that when Eli Cornish conveyed to Dunn, and Dunn to Poole, and Poole to the Hampton Realty Company, in 1906, there was a fence along the south line of the southeast quarter of section 31, and also a fence running north and south on the east line of section 31. These fences constituted the east and south enclosures of the tract here involved. There were also fences on the north and west sides of a larger tract of which the parcel here involved was a part. So we may assume that in 1906 the tract here involved was actually enclosed by a fence. But in 1910 the Hampton Realty Company opened a street on the east side of section 31 and took for the street a strip 27 feet wide off the entire east side of the parcel of land here involved. That strip has been used continuously for a street ever since 1910; so all that is left of the parcel of land in this case is a strip, 25 feet east and west and 175 feet north and south, lying west of the said street.[7]

[5] See *Woodall* v. *Edwards,* 83 Ark. 334, 104 S. W. 128; *Morris* v. *Eagle,* 94 Ark. 180, 126 S. W. 382; and *Arkansas Portland Co.* v. *Lands,* 179 Ark. 553, 17 S. W. 2d 281.

[6] In Jones' "Arkansas Titles," § 1497, *et seq.,* there is a chapter on adverse possession, which states in detail the substance of most of our numerous cases on adverse possession.

[7] The claim is made by appellees that the use of the street was permissive by C. L. Poole, rather than adverse to him. Even if we

When the street was opened in 1910 the fences were removed from the east and south sides of the parcel, and ever since 1910 the tract remaining (*i. e.*, 25 feet by 175 feet) has been west of the street and has been unenclosed[8] and unimproved. For a short time C. L. Poole used the said tract—across the road and north of his house—as a storage lot for his farm implements, but such use was non-continuous; at infrequent intervals boys played ball on the lot and in the road. The continuous actual adverse possession—as that term is used in the decisions—has not been exercised by appellees since 1906.

Therefore, we have a case in which the plaintiffs have neither a record title nor a title acquired by adverse possession, and are not entitled to prevail either in an ejectment action or in a suit to quiet title; and the Chancery Court was in error in quieting the plaintiffs' (appellee's) title.

IV. *Appellants' Rights.* But because the plaintiffs (appellees) are not entitled to prevail is no reason that the defendants (appellants) are entitled to have their title quieted as prayed. In fact, we conclude that the defendants are entitled to only a small strip of the property here involved. The evidence shows that in 1905 Eli Cornish made a deed to Dr. Wilson, in which certain property was definitely described; that the east side of the property was marked with a rail fence; and that Dr. Wilson had a wire fence placed just east of the rail fence on the entire east side of the property. The title of Dr. Wilson passed by will to Mrs. Iszora Wilson, his wife, and by deed from her to Jack Thomason, one of the defendants.

---

ignore the Hampton Realty dedication and plat, nevertheless the record shows that in 1928 C. L. Poole conveyed to J. D. Whitehead land North of the parcel here in suit, and in the said deed to Whitehead, C. L. Poole described the conveyed premises by reference to the " . . . street running North on Section line between Sections 31 and 32 . . . " That street so referred to in the deed is the street in question here; so the heirs of C. L. Poole are estopped to deny the street as far as Whitehead is concerned; and no permissive use to the public has been shown. Rather there is evidence of a dedication and a public user.

[8] That is, unenclosed except for the Wilson fence discussed in Topic IV, *infra.*

Mrs. Iszora Wilson, the other defendant, testified that the Wilsons never intended to hold any property except what was enclosed by the wire fence. Appellants' counsel conceded in the oral argument, and the testimony of appellants' witnesses showed, that there is a strip 12 feet wide, lying east of the wire fence and west of the road. Under the testimony of Mrs. Iszora Wilson and Miss Sallie Lou Wilson, this 12 foot strip does not belong to the appellants. The deed from Eli Cornish to Dr. Wilson was color of title to what it described; but the testimony of Mrs. Wilson, as to no claim beyond the fence, constituted a declaration against interest and a renunciation of any claim to property east of the fence; and the better view of the evidence is that the fence was 12 feet west of the west side of the road. In short, all the appellants can hold is the property enclosed by the wire fence.

## CONCLUSION

We conclude that the decree of the Chancery Court should be reversed and the cause remanded, with directions to dismiss the complaint of the plaintiffs, and to quiet appellants' title to the west 15 feet of the parcel here involved. As to the strip 12 feet wide lying west of, and adjacent to, the street, neither party is entitled to prevail in the present state of the record, since the record title appears to be in Eli Cornish. The costs of both Courts are adjudged against the appellees.