WEBB *v.* CURTIS.

5-2775                                361 S. W. 2d 87

Opinion delivered October 22, 1962.

*Dinning & Dinning,* for appellant.

*A. M. Coates,* for appellee.

NEILL BOHLINGER, Associate Justice. In the year 1900 M. E. West and his wife, Mary G. West, subdivided a plot of ground owned by them in Helena, Arkansas and filed their plat and dedication deed. This subdivision was known as the West's Addition in the City of Helena. M. E. West and his wife reserved Lot 9 and a strip of land being 10 feet North and South by 118.4 feet East and West out of the Northwest corner of Lot 10 as their homestead and occupied same up to the time of Mr. West's death, after which Mrs. West continued to occupy the place until about 1957.

Alice W. Foster was the owner of all of Lot 11 and Lot 10 of West's Addition with the exception of a strip of land 10 feet North and South by 118.4 feet East and West out of the Northwest corner of Lot 10, which strip had been retained by the Wests as part of their homestead.

The appellees acquired their property from Alice W. Foster in 1940 under a deed giving metes and bounds description and the appellees at the same time acquired from

Mrs. Foster a quitclaim deed to two narrow strips of land [here in controversy] lying immediately North of the well defined hedgerows and fence line. There appears to have been no monument or marker set that would indicate the line.

The appellees brought this suit for the purpose of establishing the North line of their property which would be, according to the plats, approximately 10 feet North of the hedgerow on the front and 12 feet North of the hedgerow and fence line on the back of the property and the appellees sought to enjoin the appellants from trespassing on these two pieces of their property. The appellants contested the suit on the ground that the appellees had for more than twenty years silently accepted a well defined boundary line which they contend constitutes the true boundary line between the two property owners.

The appellees' record title dates from the 16th day of January, 1940. The holding of the appellants dates from December 1959 when they acquired the property which is now their homestead. It is clear from the record before us that no doubt or confusion existed in the minds of the appellants' predecessors in title. The testimony of Will Smith on this point is pertinent. He testified that during the time Mrs. West was living on the adjoining property he was employed by Mr. Curtis, the appellee, to cut down a pecan tree that was located on the property which is now in dispute. That when he was cutting the tree, Mrs. West asked him why he was cutting it and he told her that Mr. Curtis had ordered it cut down and Mrs. West said: ''Well, if it was on my property I wouldn't have it cut,'' but there was nothing she could do about it so to go ahead and cut it down. He had cut another tree on the property now in dispute and had piled some brush on the land and couldn't move it at that time and Mrs. West remarked on that occasion that it wouldn't make any difference to her because it was on Mr. Curtis' land and to move it when you get ready.

C. L. Moore also testified that Mr. and Mrs. West had sold to Mr. Foster a 10 foot strip and a 12 foot strip

because Mr. Foster found that his house was on the line and he didn't have room for a garage and that's when they sold him the extra 10 feet so he could put his garage on it. Thereafter the Wests made no claim to it.

From the record it appears that this controversy might well be pinpointed on the testimony of one of the appellants, Mrs. Webb:

"A.   Now, I looked at the property, but to tell you the truth, I never noticed the gravel driveway. It came beyond the hedgerow. It didn't start right at the Curtis house. It comes over so little you would almost have to get out and look at the lines to notice it.

Q.   What do you mean by looking at the line, Mrs. Webb?

A.   *We naturally thought the hedgerow was the line.* In fact, anybody looking at that property I believe would call the hedgerow the line, if you are unfamiliar with the property." [Emphasis added]

Since the appellants' predecessors in title made no claim of acquiescence in a boundary or any claim of adverse possession, the case rests upon appellants' claim by adverse possession or acquiescence acquired since 1957. In the case of *Brown Paper Mill Co., Inc.* v. *Warnix,* 222 Ark. 417, 259 S.W. 2d 495, we said:

"* * * Of course a landowner who puts his fence inside his boundary line does not thereby lose title to the strip on the other side. That loss would occur only if his neighbor should take possession of the strip and hold it for the required period of years." [See also *Cossey* v. *House,* 227 Ark. 100, 296 S. W. 2d 199.]

It may be true that Webb assumed that the southern boundary to his property was the hedgerow but a mere subjective belief cannot transfer the title to land.

In *Ball* v. *Messmore,* 226 Ark. 256, 289 S. W. 2d 183, we made the following statement:

"In claiming more land than the chancellor awarded them the appellants rely upon the testimony of several

witnesses who say that the branch has long been understood to be the line. This testimony may be true, but it falls short of establishing a record title, or adverse possession, or an agreed boundary line, or any other fact of substantive importance. It shows at most the existence of a general belief about the line, but of course such a belief could not have the effect of vesting or divesting the title to real property.''

The instant case presents an even stronger case for application of the above pronouncement for here the record title is in the party against whom adverse possession, acquiescence, or general belief is claimed.

At the very start of appellants' claim of acquiescence or general belief they are met with the proposition that they knew, or should have known, the true boundary for the deed which they received to the property, in describing the boundaries, states:

''* * * thence South 10 feet along the West line of that part of said tract conveyed to Alice W. Foster[1] by deed recorded in book 189, page 422, * * *.''

That deed described approximately one-half of the strip here in controversy; the other one-half had been previously conveyed to Foster. Therefore, by looking in the record noted in his own deed, Webb could have ascertained that he did not own any part of the disputed strip.

The use of part of the property as a dog run by former owners was at most a permissive use. No use was made of the front part of the strip except by appellees as part of their driveway and when appellants attempted to occupy or use said strip this action resulted.

The chancellor's finding that Webb had not obtained title to the property by adverse possession or by acquiescence is sustained by an overwhelming preponderance of the evidence. The chancellor quieted the title to the disputed strip in the appellees and enjoined the appellants from trespassing. That decree is now affirmed.

---

[1] Curtis' predecessor in title.