Ernest WARREN and wife *v.*
Bruce I. COLLIER and wife

77-131                                    559 S.W. 2d 927

Opinion delivered January 16, 1978
(Division I)

*James K. Young,* by: *Luther B. Hardin,* for appellants.

*J. Marvin Holman,* for appellees.

GEORGE ROSE SMITH, Justice. In this boundary line case there is no contention by the plaintiffs Collier that they acquired title to the wooded strip in issue, totaling about an acre, either by adverse possession or by a boundary line agreement. The chancellor's decision in favor of the Colliers was based upon his finding that a fence line had been acquiesced in for many years as the boundary. Whether that finding is contrary to the clear weight of the proof is the only question.

The mere existence of a fence between adjoining landowners is not in itself sufficient to establish a boundary by acquiescence; there must be a mutual recognition of the fence as the dividing line. *Carney* v. *Barnes,* 235 Ark. 887, 363 S.W. 2d 417 (1962). A boundary by acquiescence has usually been inferred from the landowners' conduct over so many years as to imply the existence of an agreement about the line. *Barnes* v. *Young,* 238 Ark. 484, 382 S.W. 2d 580 (1964); *Stewart* v. *Bittle,* 236 Ark. 716, 370 S.W. 2d 132 (1963); *Gregory* v. *Jones,* 212 Ark. 443, 206 S.W. 2d 18 (1947); *Harris* v. *E. B. Mooney, Inc.,* 211 Ark. 61, 199 S.W. 2d 319 (1947).

Here the Colliers, as plaintiffs, failed to prove acquiescence on either side of the fence. The Warrens have owned the land east of the fence since about 1946 and, according to both of them, have known all during their ownership that the fence was erected to keep cattle out and was not intended as a boundary line. Both testified that the ad-

joining owner until 1952 was Mr. Standridge, Mrs. Warren's father, who discussed with them the fact that the fence was not on the line.

In 1952 what is now the Colliers' property was sold by Standridge to Mr. and Mrs. Bayles, who owned it until 1971. What proof there is indicates that the Bayleses knew that the fence was not on the line and in fact were aware of just about where the true boundary was. A letter that Mrs. Bayles wrote to the Warrens confirms Mrs. Warren's testimony on this point. The Bayleses' grantee testified favorably to the Warrens, but upon the proof as a whole no implication of an agreement arises from the parties' conduct between the Bayleses' sale of the property in 1971 and the filing of this suit in 1976.

Hence the chancellor's finding of acquiescence rests essentially upon the mere existence of the fence, which was not completed until 1946 or 1947, and upon proof that the adjoining landowners both allowed their cattle to graze on opposite sides of the fence, in a wooded area. We must conclude that the clear preponderance of the evidence is contrary to the view that the fence was established by acquiescence for so many years as to imply the existence of an agreement that it was the boundary.

The decree is reversed and the cause remanded for the entry of a decree in favor of the appellants (except with respect to that area near the Colliers' driveway to which the Colliers concededly have title by adverse possession).

We agree. HARRIS, C.J., and FOGLEMAN and HOLT, JJ.