Ray CAMP and Marcia CAMP *v.* Lino
LIBERATORE, Jr. and Marguerite A. LIBERATORE

CA 80-484                                      615 S.W. 2d 401

Court of Appeals of Arkansas
Opinion delivered May 13, 1981

*George Pike, Jr.*, for appellants.

*John M. Belew*, for appellees.

GEORGE K. CRACRAFT, Judge. This appeal arises from a dispute over the location of the boundary line between adjoining landowners. The appellants Camp claim under a chain of title conveying the "North Half of the Southwest Quarter, Section Twenty-eight, Township Eleven North, Range Seven West, lying east of the county road." Appellees Liberatore claim through a chain which describes their lands as the South Half of that quarter section bounded also by the road. That part of this quarter section lying west of the road is not involved in this dispute.

The appellants claim that their ownership extends to the true section line as surveyed by them in 1979. Appellees, while conceding the accuracy of that survey, contended that an old fence line lying north of that line as surveyed had been established as the boundary line between their respective properties by mutual agreement and acquiescence of their predecessors in title for a period of twenty-three years. Between 1972 and 1979 the appellee undertook to reconstruct the old fence by erecting a new one which he testified was located one foot south of the remnants of the old fence. The chancellor found from the evidence that the old fence line referred to by appellees was a mutually agreed boundary and entered a decree which established it as a division line between the two properties. That line was located in the decree as being one foot north of the existing fence. The appellants appeal from that decree.

Prior to 1948 the entire quarter section was owned by A. M. Gillespie who caused the quarter corners, reestablished by a Geological Commission survey, to be permanently marked by stone monuments. These markers were set at the east and west corners of the line dividing the north and south halves of the quarter section, but no markers were placed in the timbered area between the two. In 1948 Virgil Allgood acquired title from Gillespie to the tract now owned by the appellees and immediately undertook to erect a fence intending to place it on the boundary line with Gillespie. He started his fence at the stone monument marking his northeast corner and worked westwardly along a line of blazes and other markings which he thought to be the section line to an intersection with the county road. The fence was strung partly on post and partly by utilizing standing timber. A subsequent survey made by the appellants in 1979 shows that he did not in fact follow the true line but that the fence he erected angled northwesterly some nineteen hundred feet. At the point of its intersection with the county road the fence was approximately one hundred eighty feet north of the section line. The fence had fallen into disrepair by 1972 when appellees acquired their title to the north half. Between 1972 and 1979 appellee completed reconstructing the fence along a line which he testified was one foot south of the visible remnants of the old fence line.

The appellants contend that the chancellor erred in finding that the fence was an agreed boundary line or one established by acquiescence referring to the Virgil Allgood fence as a "meandering, zig-zag, rag-tag fence" and Virgil's original intent and purpose to use it to contain his cattle. While there was evidence that the fence was not of such a nature, appellants contend that such a fence and purpose could furnish no basis for a boundary line by agreement or acquiescence. In support of this position they rely upon *Hoskins* v. *Cook*, 239 Ark. 285, 388 S.W. 2d 914; *Warren* v. *Collier*, 262 Ark. 656, 559 S.W. 2d 927; *Fish* v. *Bush*, 253 Ark. 27, 484 S.W. 2d 525, and other similar cases. Appellants argue that these cases hold that meandering fences of convenience cannot furnish the basis for the establishment of a boundary by acquiescence. We do not construe these cases as declaring the rule to be as appellants contend. They hold no

more than that the erection and maintenance of a fence at or near the boundary line between adjoining landowners is not enough, *in and of itself*, to establish a boundary line by agreement and acquiescence. What they do hold is that the basic question in each case is what was the intention of the parties with respect to that fence. This distinction was pointed out by Justice George Rose Smith in *Fish* v. *Bush*, supra, as follows:

> The basic question is one of intention: Did the adjoining landowners mean to recognize the fence as the boundary? The controlling distinction is clearly stated by Justice Bohlinger in *Carney* v. *Barnes*, 235 Ark. 887, 363 S.W. 2d 417 (1962): 'The case hinges on whether or not the old fence and the fence row was an agreed line between the two pieces of property. While the construction and maintenance of a division fence, when mutually regarded as a boundary, may constitute recognition and acquiescence mere existence of a fence between adjoining landowners is not of itself sufficient. There must, therefore, be a mutual recognition of the fence as the dividing line.'

The location, nature or type of construction of the fence is not controlling, but may in some instances be a factor to consider in making the ultimate determination as to whether the requisite intent exists. Where that mutual intention and acceptance is indicated by other facts presented in a particular case, the fence line, whatever be its condition or location, becomes merely the visible means by which the agreed line is located. It is the agreement and acquiescence, not the fence itself, that controls. The intention of the parties and the significance that they attach to the fence rather than its location or condition, is what is to be considered.

The chancellor found on evidence presented to him that there had been sufficient mutual agreement and recognition of this fence line to constitute a dividing line between the respective owners; that the new fence erected by appellees followed the old fence line accurately and was on appellees' property at all times one foot south of the old line. We do not reverse the findings of a trial judge unless we find that they

are clearly against a preponderance of the evidence. As preponderance turns heavily on credibility, we defer to the superior position of the chancellor in this respect. *Hackworth* v. *First National Bank of Crossett*, 265 Ark. 668, 580 S.W. 2d 465.

The chancellor heard the testimony of nine witnesses and with the exception of appellants and appellees, all of them were familiar with the history of the fence, and had at one time been the owner of one of the two tracts involved. They were all familiar with the stone markers that marked the east and west ends of the true section line. None of them, however, knew where that line lay on the ground in the timber between these two points. The Allgood brothers, respective predecessors in title to the parties, testified that they had agreed that Virgil's fence was to be accepted as their boundary line and continued to recognize it as such. Gerald Brown, Cecil Allgood's grantee and immediate predecessor in title to appellants, testified that he too recognized that fence as a boundary between himself and his neighbor, even though he knew that the line had never been surveyed. Pierce, a predecessor in title to the appellees, testified that he had always during his period of ownership accepted and recognized the fence as the line. The appellee testified that when he first discussed the reerection of the old fence with Brown, Brown admitted that the fence line was the boundary and that he was told to go ahead and build the fence but "not go past the fence line." There was also testimony from Pierce and others that Brown had recognized it while they were adjoining landowners. From this, and other testimony in the record, we cannot say that the finding of the chancellor was clearly against a preponderance of the evidence.

The appellants further argued that there could be no boundary line established by acquiescence or agreement because the corners were marked, a fact known to all parties, and about which there was never any dispute. While it was shown that the location of the corners was known to all, it was further shown that no one knew where the line between those markers lay on the ground in the timbered area between them. It is not necessary that a prior dispute exists about the location of a boundary or division line in order to

establish such boundary by acquiescence or agreement. *Gregory* v. *Jones*, 212 Ark. 443, 206 S.W. 2d 18; *Vaughn* v. *Chandler*, 237 Ark. 214, 372 S.W. 2d 213. Where there is doubt or uncertainty as to the true location of the boundary line the parties may by parol fix a line which, at least when followed by possession with reference to it, may be conclusive upon the parties. *Malone* v. *Mobbs*, 102 Ark. 542, 146 S.W. 143.

The appellants finally argued that the court erred in establishing the old fence line as the boundary because it had become so deteriorated over the years that it could not be accurately located at the time appellees reconstructed the fence. There was sufficient evidence before the court from which it could, and did find, that the remnants of the old fence line were sufficiently visible to enable appellees to accurately locate them on the ground; that appellees erected the fence at all times one foot south of that old fence line; and hence that the boundary line established by acquiescence and agreement was a line located one foot north of the existing fence. We cannot say that those findings are clearly against a preponderance of the evidence.

We affirm.

MAYFIELD, C.J., and CORBIN, J., dissent.

MELVIN MAYFIELD, Chief Judge, dissenting. I respectfully dissent from the majority decision in this case for the following reasons.

In the first place, both parties had the property here involved surveyed in 1979 and stipulated during the trial that the true boundary line is accurately reflected on the appellees' survey and that this surveyed line should prevail unless the court found an old fence line to be the boundary.

Both the north half and the south half of the quarter section involved were owned by the same man in 1948. That year he had a survey crew go around the entire 160-acre tract establishing each corner of the tract. This was done by using the southwest corner of the quarter section which had been

located and confirmed by the State of Arkansas Geological Commission, Land Survey Division, from the field notes of the early 1800 United States surveyors. Not only was each corner of the 160-acre tract established but the two corners which form the beginning and ending point of a line splitting the quarter section into its north half and south half were also established and marked. These corners were found and used in the surveys made by the parties in 1979.

In 1948, Virgil Allgood bought the south half of the quarter section and built a fence on the northern edge of his property. In 1949, his brother Cecil bought the north half of the quarter section. Cecil owned this half until 1952, when he sold it to his brother-in-law Gerald Brown. In 1979, Brown sold it to the appellants in this case, Ray and Marcia Camp.

The south half of the quarter section has been owned by various people through the years and in 1972 was purchased by the appellees, Lino and Marguerite Liberatore.

The fence that Virgil Allgood built in 1949 started at the southeast corner of his property and angled northwesterly to a point 180 feet north of the true boundary line, taking in approximately 3.46 acres of land that was in the north half of the quarter section which he did not own.

It is this acreage that the appellees get as a result of the majority decision in this case. They get this land because the chancellor found that the old fence line is a boundary line by acquiescence. There have been many cases decided by the Arkansas Supreme Court on this point. See *Hoskins* v. *Cook*, 239 Ark. 285, 388 S.W. 2d 914 (1965); *Fish* v. *Bush*, 253 Ark. 27, 484 S.W. 2d 525 (1972); *Hicks* v. *Newton*, 255 Ark. 867, 503 S.W. 2d 472 (1974); *Warren* v. *Collier*, 262 Ark. 656, 559 S.W. 2d 927 (1978) and *James* v. *Seward*, 265 Ark. 225, 578 S.W. 2d 16 (1979).

All of the above cases hold that the mere existence of a fence between adjoining landowners is not of itself sufficient to establish a boundary line by acquiescence. There must be a *mutual recognition* of the fence as the *boundary* line. That there has been no mutual recognition that the fence built in

1949 was a boundary line is shown by the testimony of Gerald Brown who owned the north half of the quarter section for over twenty-five years. During all these years the south half of the quarter section was owned by various people. Brown testified that when he bought the property from his brother-in-law Cecil Allgood he didn't recall any statement concerning the fence and he took Cecil's word that he was getting the acreage called for. During all the years from that time until the Liberatores purchased the adjoining property, there was never any dispute about the location of the fence. There was never any agreement whatsoever about whether the fence was the line or not. It just wasn't mentioned. And when Liberatore bought the adjoining property there was no agreement between them as to the line.

In addition to that, the evidence shows that when Liberatore bought his land in 1972 the fence built by Virgil Allgood in 1949 had practically disappeared. Liberatore himself testified that there were remnants of an old fence with intermittent posts either standing or lying down and that he tripped a few times because he couldn't tell where the wire was for it was buried in the leaves. He testified that when he started putting up a new fence in 1972 he sometimes tied to a remnant of wire or post from the original fence, that sometimes his fence ran within one foot of the old remnants and sometimes within five feet, and "if I thought it needed straightening, I would straighten it out." One can look at the pictures in the record and see that the fence involved is a zigzag, tree-to-tree and post-to-post fence. And the chancellor himself fixed the line, which he found to have been established by acquiescence, at one foot north of this new fence constructed by the Liberatores.

I agree with the appellants whose brief states that "a basic principle running throughout all of the cases is that the burden of proof is upon any landowner who seeks to have a boundary line established at any location other than the true boundary as revealed by the original surveys nearly 200 years ago."

I also agree with appellants' brief that to disrupt these original surveys allowing "nearly 200 years of history to go

308

down the drain ... in favor of the remnants of some ragtag fence wandering through the woods is ... undesirable."

Reviewing the evidence, as is our duty, under Rule 52 of the Rules of Civil Procedure, I think that the chancellor's finding is clearly against the preponderance of the evidence and I would reverse the decision.

CORBIN, J., joins in this dissent.