R.C. ROBERTSON *v.* Raymond LEES

CA 03-317                                              189 S.W.3d 463

Court of Appeals of Arkansas
Divisions IV and I
Opinion delivered June 30, 2004

*Witt Law Firm, P.C.,* by: *Neva B. Witt,* for appellant.

*Walters, Hamby & Verkamp,* for appellees.

SAM BIRD, Judge. This is a case about a boundary line dispute. The trial court found that appellant, R.C. Robertson, had failed to prove a boundary by agreement or acquiescence or that he proved ownership of the disputed tract by adverse possession. The trial court also quieted title to a parcel of land in appellee, Raymond Lees. We affirm in part and reverse in part.

R.C. Robertson filed a petition seeking an injunction, alleging that he owned a parcel of land in Scott County, Arkansas, and describing the parcel; that appellee Raymond Lees owned land adjoining the north boundary of Robertson's property; that there had been a fence between Robertson's and Lees's lands that had served as the boundary between the parcels for thirty-eight years; that after conducting a survey, Lees had torn down and removed the fence; and that the court should declare the fence line to be the boundary between the parties. Lees answered, admitting the parties' ownership of their respective parcels of land but denying the other allegations of the petition. Lees also filed a counterclaim, alleging that he had obtained information from Von Robertson, a prior owner of his parcel, about the location of the boundary between Robertson's and Lees's parcels and that he had obtained a survey confirming that the old fence line was not the "true" boundary line between the two parcels. By his counterclaim, Lees also alleged that he was the owner by adverse possession of the parcel of land described in his deed,[1] and Lees sought to quiet title to the property described in his deed in him. Robertson denied the allegations in the counterclaim, specifically denying that Lees had acquired title to any part of Robertson's land by adverse possession.

### The Evidence

### Robertson's Case in Chief

Robertson testified that, at one time, his grandfather had owned all of the property involved, including the parcels now owned by Robertson and Lees, and that he obtained his land in 1983 under the will of his sister, Lillian "Geda" Robertson (Geda).

---

[1] The parcel of land described in Lees's deed is also described in Paragraph V of his counterclaim.

On his land is a house, a shed or outbuilding, and a well. Robertson testified that a clothesline and cedar-posted fence that his sister had built in 1971 or 1972 lay to the north of the outbuilding and well, and he said that the clothesline and .fence were in place in 1983 when he acquired the land. He stated that he lives with his grandson in Watson, Arkansas, but that he has visited the property every year since he acquired it and that he pays to have the property maintained. Robertson testified that, in addition to the fence along the north boundary, Lees also took down twenty or thirty feet of fence on the west boundary of the property. Robertson testified that, to his knowledge, neither he nor his aunt Von Robertson ever pointed out the boundaries, but that he knew where the boundaries were located. Robertson testified that he had once been told by Reese Herren, a neighbor, that the fence was a foot or two off the actual boundary, but that Reese had later told him that the fence was exactly on the boundary line. Robertson stated that he was not claiming any property other than to the fence line, and he was claiming that the fence was on the boundary line that coincided with the description in his deed. Robertson read into the record the description of his land as it appeared in his deed.

William Kenneth Robertson, Jr. (William), Robertson's grandson, testified that appellant lived part of the time with him in Watson, Arkansas, and part of the time in the house on the disputed land. William also testified that, as a young boy, he remembered that the disputed land had a fence on the north side and that the fence was not new at that time. He also testified that in 1970 the clothesline poles were on the property now owned by his grandfather (Robertson) and that the boundary-line location claimed by Lees, as indicated by a line of steel fenceposts set by Lees, would take in the clothesline. William also testified that Lees had told him that he had had a second survey conducted and that the new line, as established by the second survey, took in most of appellant's shed. William said that his grandfather had told him to remove some of the steel fenceposts placed by Lees.

William stated that Robertson had maintained the land by having someone in the family mow it or by paying someone to mow it, including all of the area within the old fence line. William stated that Robertson was claiming from the old north fence line to the highway. He also stated that, in 1994 or 1995, Lees was paid to mow Robertson's land but denied that Lees has mowed it every year since 1993. William stated that, until this dispute arose, he did

not see any evidence of anyone claiming the land. He also stated that Robertson had stayed at the house alone overnight since acquiring it. William further testified that, when he was in college, he used the house as a get-away, commonly staying there for one or two weeks during the summer. He said he married in 1995 and that he and his wife visited there before and after they married. He stated that he knew Von Robertson but that she never showed him the boundaries and that he never knew of her talking to anyone about the boundaries. He did not recall meeting Pat Richmond, Lees's predecessor in title, until they met at court.

Edna Faye Owens, Robertson's cousin, testified that she lived north and west of Robertson's land and directly across a field from Lees. She testified that Robertson took possession of the land and started coming there occasionally after Geda died. She stated that the west and north sides of the land were fenced when Geda owned it. She recalled the fence and clothesline poles being there in 1977 when her mother passed away, and that the clothesline poles were still in the same place now. Owens stated that she helped Robertson maintain the place, mowing the yard and weed-eating around the house. She said that she always mowed to the fence on the north side. She said that Geda had a burn barrel and that it is still in the same place that it has always been. She said that the fence on the north boundary was an old fence with cedar fenceposts that had been there for thirty years. She also stated that, to her knowledge, everyone in the family considered the cedar-post fence line to be the boundary of Robertson's land. She said that when she mowed, she mowed the entire tract, not just the part that was now in dispute, because at that time it was not in dispute. Owens said that Lees told her in 2002, not 1993 or 1994, that she did not need to mow the disputed property because it belonged to him. She said that she could not say whether Lees mowed the area in dispute because she could not see that area from her house.

Owens further stated that William Robertson and his wife came to the property almost every weekend. She said they would visit with her until bedtime because the property did not have electricity or heat. She stated that Von Robertson was her great-aunt. She said that she may have been present when Lees bought the property but did not recall her Aunt Von showing Lees the boundaries.

Howard King, Robertson's son-in-law, testified that he was acquainted with the disputed property and that Robertson owns it. He stated that the boundary lines were obvious prior to Geda's

death, with a fence on the north line. He stated that some of the posts were iron and some were cedar, and that the fence had been in place since 1972, which is when he first visited Geda. He stated that he visited Geda on a regular basis from 1972 until her death but that he had only been to the property once or twice since 1985. King identified four photographs taken in the early 1980s that showed the fence as it existed when Geda was alive. He said that the clothesline also existed at the time. His wife, Charlene King, corroborated his testimony. She also stated that the clothesline posts shown in the photographs were the same ones that Geda had put up, and that they appeared to be in the same position as they were in the 1980s.

### Lees's Case in Chief

Patricia Richmond, Lees's predecessor in title, testified that she owned Lees's parcel from 1991 until she sold it to Lees in 1993. She stated that Von Robertson had told her that the boundary line adjacent to Robertson's land was somewhere between the pump house and the old fence. She stated that she had looked at the land before trial at Lees's request and that it appeared to her that the clothesline was not where it used to be, and that, from looking at the photographs, the clothesline used to be closer to the pump house. Richmond testified that Edna Faye Owens told her that Geda had needed some additional land for a clothesline and that the fence line was not the boundary. She also said that the area between the two parcels was overgrown and that she did not mow down to the fence because that area was overgrown with brush. She stated that she could not recall whether there was a fence in the overgrown area. She also stated that Robertson's property was overgrown because it was not mowed.

Lees's wife, Christine Lees, testified that, when Lees purchased the property, they were told that the boundary ran near the pump house and the shed. She stated that Patricia Richmond and Von Robertson showed her where they understood the line to be. She said that Von Robertson had said that the clothesline was placed where it was for Geda's use, but that the land actually belonged to Lees. She also stated that, when they purchased the land in 1993, Robertson's land was so overgrown that one could not see Robertson's house or tell that it had a porch. She testified that they did not realize that there was a fence until they started clearing brush in 1994. She testified that her husband had obtained a survey in 2001, that the surveyors had placed pins to mark the

boundary, that Lees had put up a post so they could see the boundary, and that the boundary line angled off. She testified that they had maintained parts of the disputed tract because they were worried about a fire spreading to their property. She stated that she believed that the clothesline was originally closer to Robertson's house and that William Robertson moved it when he planted muscadine vines. She denied moving the clothesline. She admitted seeing Edna Owens and Lester Phillips mow the back of the disputed tract but denied seeing William Robertson mowing.

Sandra Jo Ferguson, Robertson's niece, testified that she was aware of the disputed boundary but that she was never present when the boundary was discussed within the family. She was aware that Patricia Richmond owned the property but not aware that Lees had purchased the property in 1993. She also testified that, during her three or four visits per year, Robertson's land was overgrown to the extent that the growth covered the porch. She stated that the property appeared unoccupied, except for one time when she saw a vehicle parked behind the house. Ferguson admitted that the property was better maintained in the last three to five years but that she did not know who was doing the work. She stated that, although she did not know the boundaries, she could generally recall the location of the fence. Ferguson testified that a barbed-wire fence was built as a barrier to keep cattle from the yard. She stated that the cedar fence posts depicted in the photographs resembled the fence posts that she recalled but added that she could not be certain. She stated that Geda Robertson's backyard extended to a fence line but that she was not certain that it was the same fence. She also testified that Geda Robertson had a small yard because she did not want to maintain a large yard. She stated that the fence was the back boundary of Geda's property but that she did not know whether the fence was located on the actual boundary line. She said that she believes that the fence was erected for convenience.

Lees testified that he had a discussion with William Robertson and told him that he was erecting a fence to keep his animals from running loose. He stated that he learned the location of the boundaries by talking to Edna Faye Owens, Von Robertson, and Patricia Richmond. He also said that he walked the boundary with William Robertson and that William agreed with him. He said that he had the line surveyed in 2001, but that it was unnecessary because he put up fence posts on the agreed line. He said that he saw Edna Owens mow the property a few times, including some of

the land claimed by him, and that he asked her not to mow the disputed area. He denied that William Robertson paid him to mow the disputed tract; he said he mowed it because he was afraid of the fire danger.

The trial court denied and dismissed Robertson's petition for an injunction. The trial court found that the evidence was insufficient to establish that Robertson owned the disputed property under theories of adverse possession, boundary by acquiescence, or boundary-line agreement. Specifically, the trial court found that neither Robertson nor his predecessors in title took steps that would put others on notice that he or his predecessors were claiming the land adversely. The trial court also noted that there was little or no testimony as to an agreement that the fence would be the boundary between the parties or as to how the fence was established. The trial court also quieted title in the land described in Lees's counterclaim in Lees. This appeal followed.

Robertson argues four points on appeal: (1) that the trial court erred in not finding that a boundary by acquiescence had been established; (2) that the trial court erred in admitting hearsay testimony concerning the location of the boundary; (3) that the trial court erred in finding that the proof was insufficient to establish Robertson's ownership by adverse possession, and(4) that the trial court erred in quieting title in Lees without the introduction of the survey and without determining where the property lay.

### Standard of Review

The standards governing appellate review of an equity matter are well established. Although this court reviews equity cases *de novo* on the record, we do not reverse unless we determine that the trial court's findings of fact were clearly erroneous. *Holaday v. Fraker*, 323 Ark. 522, 920 S.W.2d 4 (1996). In reviewing a trial court's findings of fact, we give due deference to the trial judge's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. *Id.*

### Arguments

### Point One

Robertson first argues that the trial court erred in not finding that a boundary by acquiescence had been established. The location of a boundary line is a question of fact, and we affirm a

trial court's finding of the location of a boundary line unless the court's finding is clearly erroneous. *Rabjohn v. Ashcraft*, 252 Ark. 565, 480 S.W.2d 138 (1972); *Jennings v. Burford*, 60 Ark. App. 27, 958 S.W.2d 12 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite conviction that a mistake was committed. *Hedger Bros. Cement & Materials v. Stump*, 69 Ark. App. 219, 10 S.W.3d 926 (2000).

A fence, by acquiescence, may become the accepted boundary even though it is contrary to the surveyed line. *See Summers v. Dietsch*, 41 Ark. App. 52, 849 S.W.2d 3 (1993); *see also Palmer v. Nelson*, 235 Ark. 702, 361 S.W.2d 641 (1962). There are cases in which the supreme court noted that the mere existence of a fence, without evidence of mutual recognition, cannot sustain a finding of such a boundary. *See Warren v. Collier*, 262 Ark. 656, 559 S.W.2d 297 (1978); *Fish v. Bush*, 253 Ark. 27, 484 S.W.2d 525 (1972); *Carney v. Barnes*, 235 Ark. 887, 363 S.W.2d 417 (1962). As the trial court noted, there was very little testimony concerning the building of the fence. While appellant and his witnesses testified that they considered the fence line to be the boundary line, there was no testimony presented that the owners of Lees's land also considered the fence to be the boundary. This court has confirmed the importance of ascertaining the intent of the parties: "It is the agreement and acquiescence, not the fence itself, that controls. The intention of the parties and the significance that they attach to the fence rather than its location or condition, is what is to be considered." *Camp v. Liberatore*, 1 Ark. App. 300, 303, 615 S.W.2d 401, 404 (1981). Instead, Robertson relies on silence from Lees and his predecessors in title. But, Lees was not silent about the matter. He told Edna Faye Owens not to mow the disputed tract. Robertson also relies on hearsay testimony that Reese Herren gave land for the clothesline and built the fence. However, the fact that a landowner puts a fence inside his boundary line does not mean that he is acquiescing in the fence as the boundary, thereby losing title to the strip on the other side. *Carney v. Barnes, supra; Webb v. Curtis*, 235 Ark. 599, 361 S.W.2d 87 (1962). That occurs only if the neighbor takes possession and holds it for the requisite number of years. *Carney, supra.* Here, Herren could have given permission for Geda Robertson to erect a clothesline on his property, which is not the same thing as acquiescing in a fence as a boundary. The evidence presented by Robertson did not reflect an intent on the

part of Lees or his predecessors to recognize the fence as the boundary. Given the deference accorded the trial judge in determining the credibility of the witnesses and the weight to be given their testimony, we affirm on this point.

### Point Two

In Robertson's second point, he argues that the trial court erred in admitting, through the testimony of Patricia Richmond, the hearsay statements of Von Robertson concerning the location of the boundary. Robertson objected to the testimony of Richmond, a former owner of the property, about what Von Robertson told her concerning the location of the boundary line. On appeal, we will not reverse a trial court's ruling on the admission of evidence absent an abuse of discretion. *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 47 S.W.3d 866 (2001). Nor will we reverse a trial court's ruling on evidentiary matters absent a showing of prejudice. *Id.* The trial court recognized that the statements Von Robertson made to Richmond were hearsay but relied on the exception found in Ark. R. Evid. 803(20). We need not decide whether the exception applies because Christine Lees gave essentially the same testimony concerning Von Robertson's statements about the location of the boundary, and Robertson made no objection to that testimony. Therefore, the admission of Richmond's testimony was not prejudicial, nor was it grounds for reversal, because it was cumulative to other evidence in the case. *Luedemann v. Wade*, 323 Ark. 161, 913 S.W.2d 773 (1996); *Shamlin v. Shuffield*, 302 Ark. 164, 787 S.W.2d 687 (1990). We affirm on this point.

### Point Three

Robertson contends that the trial court erred in failing to find that he had established title by adverse possession. In order to establish title by adverse possession, Robertson had the burden of proving that he (or his predecessors in title) had been in possession of the property in question continuously for more than seven years and that the possession was visible, notorious, distinct, exclusive, hostile, and with the intent to hold against the true owner. *Anderson v. Holliday*, 65 Ark. App. 165, 986 S.W.2d 116 (1999). Whether possession is adverse to the true owner is a question of fact. *Id.*

> The proof required as to the extent of possession and dominion may vary according to the location and character of the land. It is ordinarily sufficient that the acts of ownership are of such a nature as one would exercise over her own property and would not exercise over that of another, and that the acts amount to such dominion over the land as to which it is reasonably adapted. Whether possession is adverse to the true owner is a question of fact.

*Fulkerson v. Van Buren*, 60 Ark. App. 257, 259-60, 961 S.W.2d 780, 782 (1998); *see also Walker v. Hubbard*, 31 Ark. App. 43, 787 S.W.2d 251 (1990); *Hicks v. Flanagan*, 30 Ark. App. 53, 782 S.W.2d 587 (1990).

▄▄▄ The trial court found that neither Robertson nor his predecessor took steps that would place a third party on notice that they were claiming the land adversely. Robertson testified that, although he has not lived on the land since he acquired it in 1983, he and his family maintained the land or hired someone to do so. The testimony as to Robertson's maintaining the land was disputed, with Lees's witnesses stating that Robertson allowed the land to become overgrown while Lees maintained it. Based upon our review, we cannot say the circuit court's findings are clearly against the preponderance of the evidence. Discrepancies in the evidence are matters involving credibility for the trier of fact to resolve, and we cannot find error in that regard.

▄▄▄ Secondly, stronger evidence of adverse possession is required in cases where a family relationship exists than is necessary where no such relationship is present. *Ueltzen v. Roe*, 242 Ark. 17, 411 S.W.2d 894 (1967); *Mitchell v. Hammons*, 31 Ark. App. 180, 792 S.W.2d 333 (1990). The reason for this rule is that, as between parties with family relations, the possession of the land of one by the other is presumptively permissive or amicable, and, to make such a possession adverse, there must be some open assertion of hostile title, other than mere possession, and knowledge thereof brought home to the owner of the land. *Bellamy v. Shryock*, 211 Ark. 116, 199 S.W.2d 580 (1947). The trial court recognized and applied this higher standard of proof when it stated that it did not consider any actions of Lillian "Geda" Robertson as being hostile so as to establish adverse possession because her possession was during a time when the land was owned by heirs of Robertson's grandfather. We affirm on this point.

*Point Four*

Finally, Robertson contends that the trial court erred in quieting title in Lees without the introduction of the survey or without determining where the boundary line was. Robertson argues that, because appellee did not introduce a survey, there is no proof in the record from which to ascertain whether the line of iron fenceposts placed by Lees does, in fact, correspond with the true boundary line. We agree. From the descriptions in the record of the parties' respective lands, it is clear that there is no overlap. In his counterclaim, Lees alleged that he had obtained a survey that confirmed the location of the true boundary line to be in accordance with information received from Pat Richmond, his immediate predecessor in title. There was also testimony from Lees's wife, Christine, that Lees had obtained a survey, that the surveyors had placed pins to mark the boundary, and that Lees had placed a fence post so they could see the boundary. Lees himself testified that although surveyors had marked the line about a year and a half earlier, it was unnecessary because he and William Robertson had already agreed on the location of the boundary in 1993, and that the fence posts that he (Lees) put up were on the agreed boundary line. Furthermore, William testified that Lees had told him about obtaining a second survey, which resulted in another boundary line, and caused Lees to place a line of metal fenceposts another twenty feet south. There was no testimony linking the line of metal fenceposts placed by Lees with the actual boundary line as established by one or either of Lees's surveys. The trial court recognized this when he found in Paragraph 3 of his order:

> 3. The [appellee] is found to be the owner of the real property set forth in paragraph V of his Counterclaim and title to said tract is quieted and confirmed in [appellee]. *Although there was much testimony about a survey that established the exact location of the line between the party's property, no such survey was introduced into evidence. Therefore, the Court makes no finding as to the location on the ground of the property line between [appellant's] and [appellees's] tracts in relation to any buildings, fences, or other structures.* (Emphasis added.)

Simply because Robertson is not entitled to prevail on his claims of adverse possession or boundary by acquiescence or agreement with regard to the old cedar-posted fence, does not mean that appellee is entitled have title to the disputed land quieted in him, as prayed. *See Thomason v. Abbott,* 217 Ark. 281, 229 S.W.2d 660 (1950). It was appellee's burden of proof in

his quiet title action to establish his allegations as to ownership of the land in question. *Williams v. Campbell*, 254 Ark. 592, 495 S.W.2d 512 (1973 ). He did not meet this burden. The only evidence as to the location of the "true" boundary consisted of the testimony of Pat Richmond and Christine Lees, both of whom testified that they had relied upon what they had been told by Von Robertson. Their testimony was as follows:

Pat Richmond's Testimony:

"As far as I understand, the south boundary of my property and the north boundary of the Robertson property was somewhere, you know, this side of the little pump house. ... The fence post with the yellow or orange survey tape in the picture is somewhere near where I would have understood the boundary to be."

". . . I'm assuming it's the past boundary because she said it was very close to the house, . . . ."

Christine Lees's Testimony:

"When we bought the property, I was shown that our line related to this little well house over beside that little shed on this side of the clothesline."

"[Y]our property goes past a clothesline up to the little well house there close to the shed." (quoting Von Robertson)

"The disputed area is from the little well house and angles back over by the little building. This twenty, I think it's twenty feet, back here. Almost from the burn barrel back."

The best that can be said of Lees's proof is that the true boundary line between his and Robertson's land lies somewhere, at some undefined location, south of the old cedar-posted fence line and running at an undefined angle in the vicinity of the pump house. Although the trial court's order quieted title in Lees to the land described in his deed, such action was meaningless in the absence of proof of the location of the south boundary of Lees's land, which the trial court expressly, and correctly we believe, found that it could not determine from the evidence. Because Lees did not meet his burden of proving the location of the disputed boundary, the trial court clearly erred in its finding that any part of the disputed land should be quieted in him. Therefore, we reverse on this point.

Affirmed in part and reversed in part.

PITTMAN, NEAL, and VAUGHT, JJ., agree.

GRIFFEN and CRABTREE, JJ., dissent.

WENDELL L. GRIFFEN, Judge, dissenting. I would dismiss the appeal in this case for lack of finality because the circuit court's order does not state with sufficient specificity the boundary lines of the property in dispute. *Petrus v. Nature Conservancy*, 330 Ark. 722, 957 S.W.2d 688 (1997) (dismissing appeal for lack of finality where the chancellor's order failed to identify the boundaries of the property in dispute where the parties intended to rely upon a future survey to establish the property boundary). It is well-settled that an order settling a property dispute must describe the boundary line between landowners with sufficient specificity that it may be identified solely by reference to the decree. *Id.*

Here, as in *Petrus, supra*, no survey was introduced. The order here referred only to a legal description contained in Paragraph V of appellee's counter-complaint, which provided the section, township, and range, and included a boundary description with the measurements of angles and specific lengths of the boundaries of the property that was contained in appellant's counter-complaint. However, the evidence does not support that the circuit court intended to adopt this legal description as the parties'· boundary, because, as recognized by the majority, the circuit court expressly indicated in Paragraph 3 of its order that it made *no* finding as to the location of the property line in this case. Moreover, even if the legal description in Paragraph V of appellee's counter-complaint is the boundary the circuit court intended to adopt, the legal description itself is not contained in the order, and thus, would be insufficient to establish the boundary because the boundary cannot be identified solely by reference to the order. *Id.* Accordingly, because the order in this case does not identify the boundary line with sufficient specificity, I would dismiss the appeal for lack of finality.

I am authorized to state that Judge Crabtree joins in this dissent.